**Frank STIFT and Thomas Williams, a minor by Frank Stift, his next friend, Plaintiffs-Appellants,**

v.

**Stanley A. LYNCH, Ted Eichholz, Paul Daw, William L. Guild and Edwin L. Douglas, Defendants-Appellees.**

No. 12480.

United States Court of Appeals Seventh Circuit.

May 11, 1959.

**238**

Robert D. Goldstine, Summit, Ill., for appellant.

William C. Wines, Chicago, Ill., Latham Castle, Atty. Gen. of Illinois, for appellee.

Before DUFFY, Chief Judge, and HASTINGS and PARKINSON, Circuit Judges.

DUFFY, Chief Judge.

This suit was brought to recover damages under the Federal Civil Rights Act, 42 U.S.C.A. § 1981 et seq. Defendants Lynch and Eichholz were the Sheriff and Deputy Sheriff, respectively, of DuPage County, Illinois. Defendant Daw was a Justice of the Peace in that County. Defendants Guild and Douglas were, respectively, the State's Attorney and the Assistant State's Attorney of DuPage County. The District Court granted the defendants' motion to dismiss the amended complaint.

Count I of the complaint charges a conspiracy under Title 42 U.S.C.A. § 1985. Count II charges, under Title 42 U.S.C.A. § 1983, a deprivation of the rights, privileges and immunities secured by the Constitution and laws of the United States. Count III is in the nature of a conspiracy count under 42 U.S.C.A. § 1986.

The complaint charges plaintiffs were arrested by defendant Eichholz on November 13, 1955, near DuPage County Forest Preserve District No. 13, known as Rocky Glen Forest Preserve. The complaint alleges that plaintiffs had been engaged in hunting wild game with legally authorized firearms. It is alleged Eichholz refused to advise plaintiffs of the grounds for their arrest although requested to do so, and compelled plaintiffs to drive a distance of thirty miles to the county jail at Wheaton, and to appear before Justice of the Peace Daw. The complaint alleges there were magistrates and justices of the peace available many miles closer to the place of arrest than Wheaton.

The complaint alleges plaintiffs were held in custody for a long period of time,[1] until a complaint was filed charging violation of a DuPage County Ordinance by carrying firearms in a forest preserve. Bail was set at $100 each which the plaintiffs furnished.

A date was set for trial before Justice of the Peace Daw, whereupon plaintiffs filed a demand for trial by jury. Plaintiffs were advised on December 6, 1955 that a trial would be had before Justice of the Peace Daw on December 8, 1955, in the village of West Chicago, Illinois, "a great distance"[2] from the city of Wheaton, Illinois. On December 8, when plaintiffs appeared with their attorney and witnesses, the defendant Douglas moved the court over the objection of plaintiffs' counsel, to enter a *nolle prosequi,* and that this was done despite the fact that on December 5, 1955 defendant Douglas, unknown to plaintiffs, had secured a criminal information in the County Court of DuPage County charging each plaintiff with the same violation as had been charged before Justice Daw.

The complaint charges that as plaintiffs were leaving the courtroom of Justice Daw, they were again placed under arrest by defendant Lynch's deputies, and transported to the county jail at Wheaton; that an excessive bail of $1,000 was set, and the plaintiffs were committed to jail until they had raised such bail. Later, the amount of such bail was reduced to $200 for each plaintiff. Trial by jury was held in the county court of

---

1. On oral argument asserted to be about two hours.

2. We may take judicial notice that the distance between Wheaton and West Chicago is about six miles.

DuPage County and the plaintiffs herein were found not guilty.

We may agree that the conduct of the various defendants herein, if true, was reprehensible. The fixing of bail at $1,000 when the maximum fine for the offense charged was $200 was without any justification whatsoever. The dismissing of the original charge after requiring plaintiffs and their attorneys to be present from a distance and bringing the same charge in another court for later trial, would seem to be a clear abuse of authority. Nevertheless, we must determine whether, assuming the allegations of the complaint to be true, the defendants may be held liable under the Federal Civil Rights Act.

Plaintiffs argue that the Federal Civil Rights Act gives a right of action to every individual whose federal rights have been trespassed upon under color of law, and that the statute makes no exceptions for judicial officers, quasi-judicial officers and law-enforcing officers. Plaintiffs point out that § 1983 states that "every person" shall be liable to the party injured. This argument finds support in the case of Picking v. Pennsylvania Railroad Co., 3 Cir., 151 F.2d 240, 248–250. The court there held that certain well-recognized common law immunities have been abrogated by Congress.

The views expressed in Picking represent a minority view. The argument there made has been considered and rejected by the First, Sixth, Seventh and Eighth Circuits. Francis v. Crafts, 1 Cir., 203 F.2d 809; Kenney v. Fox, 6 Cir., 232 F.2d 288; Cawley v. Warren, 7 Cir., 216 F.2d 74 and Tate v. Arnold, 8 Cir., 223 F.2d 782.

The argument that liability under the Federal Civil Rights Act may apply to "every person" is no longer tenable. In Tenney v. Brandhove, 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019, an action was commenced under the Federal Civil Rights Act against members of a legislative committee of the California State Senate. The Supreme Court held the legislators were immune to action under the Civil Rights Act.

### Defendants Guild and Douglas

Plaintiffs cite Lewis v. Brautigam, 5 Cir., 227 F.2d 124, 55 A.L.R.2d 505 as an authority for the proposition that State's Attorney Guild and Assistant State's Attorney Douglas may be held liable under the Federal Civil Rights Act. It must be admitted this case is authority for the view expressed by plaintiffs, but the great weight of authority is to the contrary. See Kenney v. Fox, 6 Cir., 232 F.2d 288; Cawley v. Warren, 7 Cir., 216 F.2d 74; Laughlin v. Rosenman, 82 U.S.App.D.C. 164, 163 F.2d 838. In Cawley, we held the State's Attorney and the First Assistant State's Attorney of LaSalle County, Illinois, were judicial officers and that the common law immunities extended to them.

We know of no other court which has followed the rule announced in the Lewis case. On the other hand, the decisions in Laughlin v. Rosenman, 82 U.S.App.D.C. 164, 163 F.2d 838, and Cooper v. O'Connor, 69 App.D.C. 100, 99 F.2d 135, 118 A.L.R. 1440, are in accord with our view as stated in the Cawley case.

In Eaton v. Bibb, 7 Cir., 217 F.2d 446, 449, we cited with approval Laughlin v. Rosenman, 82 U.S.App.D.C. 164, 163 F.2d 838, as authority for the proposition that prosecuting officials are not to be amerced by actions under the Federal Civil Rights Act for their actions in connection with official prosecutions even though it is alleged that such acts were done maliciously. We hold the complaint in the case at bar was properly dismissed as to defendants Guild and Douglas.

### Defendant Daw
### Justice of the Peace

It has long been recognized that judges of courts of record and of general jurisdiction are immune from civil liability for acts done by them in the exercise of their judicial functions. Alzua v. Johnson, 231 U.S. 106, 34 S.Ct. 27, 58 L.Ed. 142; Bradley v. Fisher, 13 Wall. 335, 80 U.S. 335, 20 L.Ed. 646. Among later cases are Tate v. Arnold, 8 Cir., 223

F.2d 782; Francis v. Crafts, 1 Cir., 203 F.2d 809. However, plaintiffs claim such immunity does not extend to a justice of the peace, and point out that a defendant in the Picking case was a justice of the peace. Plaintiffs cite McShane v. Moldovan, 6 Cir., 172 F.2d 1016 which does support the view urged by them.[3]

█ In Illinois, the common law immunity of judges and other judicial officers never has been extended to justices of the peace. Since 1859, an Illinois justice of the peace has been amenable to civil suit for his malicious and corrupt acts. Garfield v. Douglass, 22 Ill. 100; Grossman v. Davis, 117 Ill.App. 354. In People for use of Jones v. Leviton, 327 Ill.App. 309, 64 N.E.2d 195, 199, there is a review of the Illinois decisions, and this case holds that a justice of the peace may be civilly liable although recognizing that "the rule may be otherwise in some jurisdictions." The court said: "While the law is settled that a Justice of the Peace is not liable for damages for any error or irregularity in the performance of his duties within the scope of his jurisdiction, it is also the law in this state that a Justice of the Peace, even though he is acting within the scope of his jurisdiction, can be made to answer civilly or criminally if he has acted maliciously and corruptly in the performance of his duties or has falsified his record. * * "

█ The case at bar is not a diversity suit. Illinois law is not controlling. We should adopt a view consistent with other cases which we have decided under the Federal Civil Rights Act which involve the question of common law immunity for judicial officers. We must consider whether a justice of the peace is a judicial officer to which the common law immunity will apply.

A case closely in point is Cuiksa v. City of Mansfield, 6 Cir., 250 F.2d 700. That case involved speed traps and alleged "Kangaroo Courts" in the state of Ohio. While the court admits that the allegations, if true, present a sorry picture of local courts, it adheres to its earlier decision in Kenney v. Fox, 6 Cir., 232 F.2d 288, and holds that common law judicial immunity must necessarily extend even to mayors' courts in small villages.

█ In Tate v. Arnold, 8 Cir., 223 F.2d 782, the court held that a justice of the peace was protected by the judicial immunity. The same result was reached in Williamson v. Waugh, D.C., 160 F. Supp. 72. The court in Thompson v. Baker, D.C.W.D.Ark., 133 F.Supp. 247, held that a justice of the peace exercised judicial functions and was entitled to immunity from civil suit under the Federal Civil Rights Act. We hold that a justice of the peace exercises judicial functions and that defendant Daw is immune from liability under the Federal Civil Rights Act.

### Defendants Lynch and Eichholz

█ Under our decisions in Eaton v. Bibb, 7 Cir., 217 F.2d 446, Miles v. Armstrong, 7 Cir., 207 F.2d 284 and United States ex rel. Atterbury v. Ragen, 7 Cir., 237 F.2d 953, we hold the complaint herein did not state a claim under the Federal Civil Rights Act upon which relief could be granted against defendants Lynch and Eichholz.

Notice should be taken of Wakat v. Harlib, 7 Cir., 253 F.2d 59, 65, wherein this court sustained a judgment against Chicago police officers who had unlawfully arrested a prisoner and extorted a false confession. In that case we considered a written regulation having the force of law. This regulation required a different treatment for a class of persons designated as "well-known criminals." Because of this discrimination, the Wakat case can and should be distinguished from our earlier decisions hereinbefore cited. It is true that in the

---

3. The recent case of Cuiksa v. City of Mansfield, 6 Cir., 250 F.2d 700, demonstrates that the McShane case is no longer the law in the Sixth Circuit. The court there pointed to a distinction but stated that in any event, the ruling in McShane must yield to the ruling of the Supreme Court in Tenney v. Brandhove, 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019.

Wakat opinion there is language to indicate that even without discrimination against a class, the defendant officers would have been liable under the Civil Rights Act. This language was unnecessary for the decision of the case and was *dictum*, and cannot be held to overrule the earlier cases of this court which we follow in making this decision.

The order dismissing the complaint is Affirmed.