Walter J. SWANSON, Plaintiff,

v.

William F. McGUIRE et al., Defendants.

No. 57 C 1164.

United States District Court
N. D. Illinois, E. D.

Nov. 3, 1960.

Joseph M. Taussig, Chicago, Ill., for plaintiff.

John Melaniphy, Corp. Counsel, Chicago, Ill., for defendants.

CAMPBELL, Chief Judge.

Plaintiff originally brought this action under the Civil Rights Acts, Title 42 U.S.C.A. §§ 1983, 1985 and 1986 and under Title 28 U.S.C. §§ 1331 and 1343, for damages against defendants, police officers of the City of Chicago.

On December 5, 1957 I dismissed Counts 2 and 3 of plaintiff's amended complaint and denied defendants' motion to dismiss Count 1 of the amended complaint.

Count 1 of the complaint alleges: that on August 29, 1956 plaintiff was sleeping in a building occupied by the Catholic Charities of the Archdiocese of Chicago, 645 West Randolph Street, Chicago; that he was invited to be there; that after 7:00 p. m. someone unfamiliar with the previous invitation called the police; that Thurmon Stearnes, defendant, answered the call, arrested plaintiff and took him to the Monroe Street police station; that at the police station each of the defendants, without provocation, beat him; that these acts were done by defendants "under color of law"; that a complaint under Section 1 of Chapter 193, Municipal Code of Chicago for disorderly conduct lodged against plaintiff by defendant police officers, was unfounded and was dismissed; that plaintiff's arrest was illegal; that there was in existence a custom or usage of the City of Chicago whereby persons were assaulted and battered by police officers of the City of Chicago for failure to obey breach of the peace statutes and ordinances; that there was also in existence a custom or usage of the City of Chicago whereby when a person was arrested by the police under circumstances which gave rise to an apprehension that he might claim a cause of action for damages, false arrest, imprisonment, or assault and battery against the police, a complaint would be lodged against such persons for alleged violation of Section 1 of Chapter 193 of the Municipal Code of Chicago; and that thereafter the arrested person would be threatened with prosecution under such complaint unless he would execute a release of liability for damages for such arrest, imprisonment or battery in favor of the City of Chicago and the alleged defending police officers. A violation of Title 42 U.S.C.A. § 1983 is alleged which provides as follows:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in

equity, or other proper proceeding for redress."

My denial of defendants' motion to dismiss Count 1 of the complaint on December 5, 1957 was based upon a consideration and analysis of the following cases: Collins v. Hardyman, 341 U.S. 651, 71 S.Ct. 937, 95 L.Ed. 1253; Bell v. Hood, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939; Screws v. United States, 325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed. 1495; Snowden v. Hughes, 321 U.S. 1, 64 S.Ct. 397, 88 L. Ed. 497; Lane v. Wilson, 307 U.S. 268, 59. S.Ct. 872, 83 L.Ed. 1281; United States v. Cruikshank, 92 U.S. 542, 23 L. Ed. 588; Geach v. Moynahan, 7 Cir., 207 F.2d 714; Miles v. Armstrong, 7 Cir., 207 F.2d 284; Clark v. United States, 5 Cir., 193 F.2d 294; Worthington v. United States, 6 Cir., 166 F.2d 557; Crews v. United States, 5 Cir., 160 F.2d 746; Burt v. City of New York, 2 Cir., 156 F.2d 791; Picking v. Pennsylvania R. Co., 3 Cir., 151 F.2d 240; U. S. ex rel. Potts v. Rabb, 3 Cir., 141 F.2d 45; Dye v. Cox, D.C., 125 F.Supp. 714.

On June 10, 1959 I again had the occasion to study exhaustively the history and purpose of the Civil Rights Acts as well as current cases. See Egan v. City of Aurora, D.C., 174 F.Supp. 794.

Subsequent to December 5, 1957, the Court of Appeals for the Seventh Circuit, in Wakat v. Harlib, 253 F.2d 59, upheld a cause of action under the Civil Rights Acts where Chicago police officers unlawfully arrested and beat plaintiff, and extorted a false confession from him.

However, on May 11, 1959 in Stift v. Lynch, 7 Cir., 267 F.2d 237, 240, the Court upheld the dismissal of a complaint under the Civil Rights Acts alleging false arrest and false imprisonment by defendants, a sheriff and deputy sheriff of DuPage County, Illinois. The Court stated at pages 240 and 241:

"Under our decisions in Eaton v. Bibb, 7 Cir., 217 F.2d 446, Miles v. Armstrong, 7 Cir., 207 F.2d 284 and United States ex rel. Atterbury v. Ragen, 7 Cir., 237 F.2d 953, we hold the complaint herein did not state a claim under the Federal Civil Rights Act upon which relief could be granted against defendants Lynch and Eichholz.

"Notice should be taken of Wakat v. Harlib, 7 Cir., 253 F.2d 59, 65, wherein this court sustained a judgment against Chicago police officers who had unlawfully arrested a prisoner and extorted a false confession. In that case we considered a written regulation having the force of law. This regulation required a different treatment for a class of persons designated as 'well-known criminals.' Because of this discrimination, the Wakat case can and should be distinguished from our earlier decisions hereinbefore cited. It is true that in the Wakat opinion there is language to indicate that even without discrimination against a class, the defendant officers would have been liable under the Civil Rights Act, This language was unnecessary for the decision of the case and was *dictum*, and cannot be held to overrule the earlier cases of this court which we follow in making this decision."

Then in Monroe v. Pape, 7 Cir., 272 F.2d 365, 366, decided on November 23, 1959 the Court upheld the dismissal of a complaint under the Civil Rights Acts alleging an unreasonable search and seizure, a series of unjustified batteries and a long, inherently coercive and unjustifiably secret detention committed against plaintiffs by defendants, Chicago police officers, acting under color of law. The Court said at page 366:

"The ultimate issue before us is whether the alleged misconduct on the part of *city police officers* of a state municipality makes a sufficient showing of a violation of the Federal Civil Rights Act.

"This question is not new to this court and has been resolved adversely to plaintiffs' contentions. The most recent decision is that of Stift v. Lynch, 7 Cir., 1959, 267 F.2d 237.

In Stift, recovery was sought under the same three sections of the Act as in the instant case. Named as defendants were a sheriff and deputy sheriff, in addition to a Justice of the Peace and the State's Attorney and his assistant. The dismissal of the complaint as to all defendants was affirmed. In sustaining the dismissal as to the sheriff and his deputy, the court said:

" 'Under our decisions in Eaton v. Bibb, 7 Cir., 217 F.2d 446; Miles v. Armstrong, 7 Cir., 207 F.2d 284 and United States ex rel. Atterbury v. Ragen, 7 Cir., 237 F.2d 953, we hold the complaint herein did not state a claim under the Federal Civil Rights Act upon which relief could be granted against defendants Lynch and Eichholz.' Id., 267 F.2d at page 240.

"Stift distinguishes Wakat v. Harlib, 7 Cir., 1958, 253 F.2d 59. See also, Jennings v. Nester, 7 Cir., 1955, 207 F.2d 153.

"We do not condone the alleged misconduct of defendants, if true, but that is not the question before us. Under the holding in Stift v. Lynch, supra, and the other decisions of this circuit referred to therein, some of which are cited above, affirmance of the dismissal before us necessarily follows. Plaintiffs are not without their remedy in the state court."

Finally, on June 1, 1960, in Truitt v. Illinois, 7 Cir., 278 F.2d 819, the Court at page 820 further explained its interpretation of the Civil Rights Acts:

"It might be argued that this case arises under the Civil Rights Acts, 42 U.S.C.A.' § 1981 et seq. However, our Court has held contra in the case of Stift v. Lynch, 7 Cir., 267 F.2d 237. There we held that the Civil Rights Acts do not create a cause of action for false imprisonment unless such imprisonment is in pursuance of a systematic policy of discrimination against a class or group of persons. Plaintiff has not alleged any such discrimination."

Since these decisions affected my denial on December 5, 1957 of defendants' motion to dismiss Count 1 of the instant complaint, I set the cause specially for argument on October 24, 1960 in order to determine whether or not a cause of action is stated under the Civil Rights Acts.

■ Having heard the arguments of the parties and having exhaustively studied the existing status of the law, I feel it to be in the interest of justice to continue this cause generally until Monroe v. Pape, Supreme Court Docket, No. 39, scheduled to be argued before the Supreme Court of the United States during the week of November 14, 1960, is decided by the Supreme Court of the United States.

■ However, I enter this order of continuance with the admonition that I am presently of the opinion that this cause should be dismissed. In Egan v. City of Aurora, supra, I pointed out in 174 F.Supp. at pages 798–800 that the Civil Rights Acts must be interpreted in light of "delicate state-federal relationships":

"It is likewise apparent that federal courts cannot be so overzealous in their desire to protect individual rights from State abuse that they unjustifiably deprive the States of their inherent sovereignty also protected by the United States Constitution. For these reasons, the federal courts, in applying the Civil Rights Acts have been consistently solicitous of 'delicate state-federal relationships.' Francis v. Lyman, 1 Cir., 216 F.2d 583, 588. In Screws v. United States, supra, 325 U.S. at pages 108, 109, 65 S.Ct. at page 1039, the Supreme Court stated with regard to the criminal counterpart of Section 1983:

" 'We agree that when this statute is applied to the action of state officials, it should be construed so as to respect the proper balance be-

tween the States and the federal government in law enforcement. Violation of local law does not necessarily mean that federal rights have been invaded. The fact that a prisoner is assaulted, injured, or even murdered by state officials does not necessarily mean that he is deprived of any right protected or secured by the Constitution or laws of the United States. * * * The Fourteenth Amendment did not alter the basic relations between the States and the national government. * * *

Our national government is one of delegated powers alone.'

"In People ex rel. Turnbaugh v. Bibb, 252 F.2d 217, at pages 219 and 220, a case involving Section 1983, the Seventh Circuit Court of Appeals quoted with approval from an earlier case:

" ' * * * Federal jurisdiction is to be exerted only in exceptional cases involving such an emergency or great urgency as necessitate action to prevent irreparable injury. The jurisdiction to interfere with the proceedings of state government bodies charged with the prosecution and punishment of offenders is an exceedingly delicate one to be exercised with the greatest of care and nicest sense of propriety. In the absence of the exceptional circumstances mentioned, a sense of comity and due regard for state jurisdiction demand that the applicant be left to his remedies with the state courts who, no less than those of the United States, are charged with the obligation to recognize and protect his constitutional rights.'

"The courts are aware that we are living in a civil rights conscious era with an intense emphasis on individual rights and liberties which are in part guarded by the revitalized Civil Rights Acts. In my opinion it is imperative that federal courts use' the greatest degree of discretion in dealing with cases of this nature to prevent an abuse of the broad language of the Civil Rights Acts and to achieve a healthy balance between individual, public official and State. The restrictive federal courts' policy induced by 'delicate federal-state relationships' and common law immunities plays a major part in achieving this balance but more important at the moment, as I see it, is the increasing danger that civil rights legislation may be used as an abusive measure against public officials. Because the federal government has chosen to give a cause of action to an aggrieved individual, under the Civil Rights Acts, it is incumbent on the federal courts to see that this federally created cause of action is not abused and therefore it is each judge's duty to protect public officials in the good faith performance of their duties from irresponsible litigation."

█ In addition, there is a practical reason for narrowly construing the Civil Rights Acts. If every alleged wrong committed by city or state police officers is construed to be a violation of these Acts, the federal courts will be flooded with civil rights suits. I sincerely believe, especially now, when the increasing scope of federal jurisdiction has heavily burdened the calendars of our judges, that it is a practical necessity to either narrowly construe statutes which are capable of broad jurisdictional interpretation or to make provision for more federal courts and judges. In the case of the Civil Rights Acts, a narrow construction, such as the one set forth by our Court of Appeals, Monroe v. Pape, 7 Cir., 272 F.2d 365, 366, will not prejudice aggrieved persons since as the Court stated: "Plaintiffs are not without their remedy in the state court." In fact, in the case at bar, plaintiff has an identical suit pending in the Circuit Court of Cook County. In addition, violations of civil rights may also be prosecuted, in accordance with the jurisdictional requirements outlined by the Supreme Court, under Title 18 U.S.C. § 241 et seq.

I believe that the construction of the Civil Rights Acts by our Court of Appeals will not result in a deprivation of individual rights. However, I do believe that the construction of the Civil Rights Acts suggested by plaintiff here can result in a deprivation of individual rights by contributing to an ever increasing calendar lag and the proverbial plague of litigants, the law's delay.

This cause is continued generally pending the decision of the Supreme Court of the United States in Monroe v. Pape, supra.