William J. BAUERS, Jr., Appellant,

v.

Herbert T. HEISEL, Jr.

No. 15277.

United States Court of Appeals Third Circuit.

Submitted Oct. 5, 1965.

Resubmitted Oct. 22, 1965.

Decided May 19, 1966.

Rehearing Denied June 9, 1966.

Biggs and Freedman, Circuit Judges, dissented.

---

William J. Bauers, Jr., pro se.

Herbert T. Heisel, Jr., pro se.

Submitted before BIGGS, Chief Judge, and MARIS and STALEY, Circuit Judges.

Resubmitted before KALODNER, Chief Judge, and BIGGS, MARIS, Mc-LAUGHLIN, STALEY, HASTIE, GAN-EY, SMITH and FREEDMAN, Circuit Judges.

STALEY, Circuit Judge.

The almost bizarre and complex factual background which prompted the present litigation has its genesis in certain events which occurred in the early 1950's. On October 29, 1950, William J. Bauers, Jr., the appellant herein, with two other inmates escaped from the Annandale Reformatory in Hunterdon County, New Jersey, and embarked upon a crime spree that carried him through Hunterdon and Essex Counties, New Jersey. Appellant's freedom, however, was short-lived; he was apprehended, charged and indicted for crimes committed in Essex County. He pleaded *non vult* to the charges of assault with intent to rob and auto larceny and was sentenced by the Essex County Court to four to six years on each indictment.

In the interim, the Hunterdon County Grand Jury had returned indictments against him for the escape from the reformatory and auto larceny. Although these indictments were returned on January 3, 1951, appellant was not tried for the offenses alleged therein until May of 1953. During this entire period, he was serving the sentence imposed upon him by the Essex County Court. When he eventually did appear in the Hunterdon County Court, he requested counsel, counsel was appointed, and a jury was selected. The Criminal Minutes indicate that all these events transpired prior to 10:15 A.M. on the day of trial. The factual elements surrounding the appointment of counsel are not greatly dissimilar from the case of Powell v. State of Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932), but no issue concerning this is involved here.

After a brief recess, Bauers pleaded guilty and was sentenced immediately to a term of two to three years on each indictment, the sentences to run concurrently with any sentence he was then serving (and apparently concurrently with each other). The state prison records indicate that Bauers had completed serving the Hunterdon County sentences prior to his release on parole on the Essex County sentences.

In February of 1963, Bauers applied to the Hunterdon County Court to dismiss the 1951 indictments and to vacate the sentences imposed on him after he had pleaded guilty. He contended that the indictments were illegal because he was a juvenile when the offenses were committed. The lower court denied his application, but the Appellate Division of the Superior Court of New Jersey reversed,[1] holding that since Bauers was not eighteen years old when the offenses were committed, jurisdiction over him was lodged exclusively in the Juvenile and Domestic Relations Court, N.J.Stat. Ann. 2A:4–14. Without a reference of the case to the county prosecutor by the juvenile court, N.J.Stat.Ann. 2A:4–15,

---

1. The facts recited herein are taken largely from the unreported opinion of the Superior Court, State v. Bauers, A–510–63 (May 8, 1964), which was attached to and made part of the complaint.

no criminal process could be invoked against a juvenile. The court ruled that since the indictments were illegal, the pleas and sentences imposed were also illegal and should be expunged from the record.

Subsequently, Bauers instituted the present suit,[2] alleging that the defendant, Herbert T. Heisel, Jr., the Hunterdon County Prosecutor at all times relevant hereto, is liable in damages to the appellant for the deprivation of his liberty and for the denial of his right to a speedy trial. The district court ordered the complaint filed and at the same time dismissed it as "lacking in merit and pertain[ing] to the matters over which the court has no jurisdiction."[3]

On this appeal, the sole issue raised is whether the defendant, acting as the Hunterdon County Prosecutor, is immune from suit under the Civil Rights Act, 42 U.S.C. § 1983, R.S. § 1979.[4] Because a full consideration of the arguments presented requires a re-examination of the position taken by this court in Picking v. Pennsylvania R. R., 151 F.2d 240 (C.A.3, 1945), the case was submitted to the court en banc.

There is no question that Picking would be dispositive of the immunity issue presently before us. Consequently, the only portion of that opinion which we reconsider deals with the liability of a judicial officer under the Civil Rights Act of 1871. In Picking, it was decided that no immunity would be afforded to a justice of the peace, a member of the minor judiciary in Pennsylvania; however, the language of the opinion is far more sweeping:

> " * * * [W]e are not unmindful of the absolute privilege conferred by the common law upon *judicial officers* in the performance of their duties. * * * But the privilege as we have stated was a rule of the common law. Congress possessed the power to wipe it out. We think that the conclusion is irresistible that Congress by enacting the Civil Rights Act sub judice intended to abrogate the privilege to the extent indicated by that act and in fact did so. * * * The statute must be deemed to include members of the state judiciary acting in official capacity." 151 F.2d at 250. (Emphasis added.)

While we do not choose to quarrel with the propriety of this disposition at the time it was made, we do believe that the Act even then would have been at least equally susceptible to a contrary construction.[5] Nevertheless, we are certain that the reasoning employed and construction given R.S. § 1979 by the Supreme Court in Tenney v. Brandhove, 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019 (1951), is contrary to the position we adopted in Picking and requires us to overrule it.

2. The complaint was not officially served on the defendant; instead, he received a copy of it by mail after the complaint had been dismissed. Although appellee Heisel did not appear in the district court, he has entered an appearance here and submitted a brief. Thus, the proceeding is adversary in nature. Compare Sires v. Cole, 320 F.2d 877, 878–879 & n. 2 (C.A.9, 1963).

3. We cannot condone the procedure followed by the district court; the requirements of Rule 4(a) are explicit. Had appellee not appeared and filed a brief here, appellant may have been foreclosed from obtaining review of the district court's determination. Compare Urbano v. Calissi, 353 F.2d 196 (C.A.3, 1965).

4. "§ 1983. Civil Action for deprivation of rights.

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

5. The rules of construction which we hereinafter apply could have been applied in Picking. We need not decide whether those rules would have required a result contrary to that which was there reached.

In Tenney, suit was brought against a committee and its members of a state legislature under R.S. §§ 1979, 1980(3), 42 U.S.C. §§ 1983, 1985(3), formerly 8 U.S.C. §§ 43, 47(3). The Court stated that the issue before it was:

"Did Congress by the general language of its 1871 statute mean to overturn the tradition of legislative freedom achieved in England by Civil War and carefully preserved in the formation of State and National Governments here?" 341 U.S. at 376, 71 S.Ct. at 788.

After making the concededly "big assumption" "that Congress has constitutional power to limit the freedom of State legislators acting within their traditional sphere," the Court answered its prophetic question:

"* * * We cannot believe that Congress—itself a staunch advocate of legislative freedom—would impinge on a tradition so well grounded in history and reason by covert inclusion in the general language before us." Ibid.[6]

* * * * * *

"* * * [H]ere the individual defendants and the legislative committee were acting in a field where legislators traditionally have power to act, and * * * the statute of 1871 does not create civil liability for such conduct." Id. at 379, 71 S.Ct. at 789.

We are not alone in our belief that the construction given R.S. § 1979 in Tenney sheds new light on the situation which confronted us in Picking. Although Picking had been the cause of some immediate concern, see Note, 46 Colum.L.Rev. 614 (1946), it was not until after Tenney that its pronouncement on immunity became the object of wholesale disavowal. In fact, five circuits explicitly stated that Tenney had in effect overruled Picking. Stift v. Lynch, 267 F.2d 237 (C.A.7, 1959); Cuiksa v. City of Mansfield, 250 F.2d 700 (C.A.6, 1957), cert. denied, 356 U.S. 937, 78 S.Ct. 779,

2 L.Ed.2d 813 (1958); Kenney v. Fox, 232 F.2d 288 (C.A.6), cert. denied sub nom. Kenney v. Killian, 352 U.S. 855, 77 S.Ct. 84, 1 L.Ed.2d 66 (1956); Tate v. Arnold, 223 F.2d 782 (C.A.8, 1955); Morgan v. Sylvester, 125 F.Supp. 380 (S.D.N.Y., 1954), aff'd, 220 F.2d 758 (C.A.2), cert. denied, 350 U.S. 867, 76 S.Ct. 112, 100 L.Ed. 768 (1955); Francis v. Crafts, 203 F.2d 809 (C.A.1), cert. denied, 346 U.S. 835, 74 S.Ct. 43, 98 L. Ed. 357 (1953). This view has also been adopted by several district courts in this circuit. Woodruff v. City & County of Philadelphia, 38 F.R.D. 468 (E.D.Pa., 1965); Hardy v. Kirchner, 232 F.Supp. 751 (E.D.Pa., 1964); Ellis v. Wissler, 229 F.Supp. 196 (E.D.Pa., 1964); Perkins v. Rich, 204 F.Supp. 98 (D.Del., 1962), aff'd per curiam, 316 F.2d 236 (C.A.3, 1963); Ginsburg v. Stern, 125 F.Supp. 596 (W.D.Pa., 1954), aff'd on other grounds, 225 F.2d 245 (C.A.3, 1955).

Though we choose to make an independent analysis of the issue before us, our rationale differs little from what was said in Tate v. Arnold, supra:

"* * * Since the doctrine of judicial immunity is at least as well grounded in history and reason as is the rule of legislative immunity, the courts have interpreted the language * * * from Tenney * * * as authority for holding that the Civil Rights Act did not abrogate judicial immunity." 223 F.2d at 785.

and in Francis v. Crafts, supra:

"* * * [T]he Picking case was decided in 1945 without benefit of the illumination and compelling analogy to be found in the opinion of the Supreme Court in Tenney v. Brandhove, supra, which came down several years later. In view of the discussion in the latter case, we have no doubt that the Third Circuit would no longer feel obliged, as it did in the Picking case, to read the Civil Rights Act in

---

6. The Court was free to make this determination because it stated that "the limits of §§ 1 and 2 of the 1871 statute—now §§ 43 and 47(3) of Title 8—*were not spelled out in debate.*" Id. 341 U.S. at 376, 71 S.Ct. at 788. (Emphasis added.)

such literal and unqualified manner as to impose liability for damages upon a state judicial officer for acts done in the exercise of his judicial function. Certainly it would be absurd to hold, in the application of the Civil Rights Act, that judicial officers of a state stand in any less favorable position than do state legislators, in respect to immunity from civil liability for acts done in their official capacity." 203 F.2d at 812.

Rather than rely on the plethora of cases which have held judicial officers to be immune from suit under the Civil Rights Act,[7] we believe that two maxims,

7. Pierson v. Ray, 352 F.2d 213 (C.A.5, 1965) (police justice); Byrne v. Kysar, 347 F.2d 734 (C.A.7, 1965) (physician-members of court appointed medical commission and assistant state's attorney); Haldane v. Chagnon, 345 F.2d 601 (C.A.9, 1965) (judges and bailiff); Arnold v. Bostick, 339 F.2d 879 (C.A.9, 1964), cert. denied, 382 U.S. 858, 86 S.Ct. 113, 15 L.Ed.2d 96 (1965) (state judge); Rhodes v. Meyer, 334 F.2d 709 (C.A.8), cert. denied, 379 U.S. 915, 85 S.Ct. 263, 13 L. Ed. 186 (1964) (state supreme court justices, state district judges, prosecuting attorneys, clerks of court, prison officials, members of state integrated bar, sheriffs and law enforcement officers); Harvey v. Sadler, 331 F.2d 387 (C.A.9, 1964) (judges); Agnew v. Moody, 330 F.2d 868 (C.A.9), cert. denied, 379 U.S. 867, 85 S.Ct. 137, 13 L.Ed.2d 70 (1964) (judges and prosecuting attorneys); Scolnick v. Lefkowitz, 329 F.2d 716 (C.A.2), cert. denied, 379 U.S. 825, 85 S.Ct. 49, 13 L.Ed.2d 35 (1964) (state attorney general and assistant attorney general); Harmon v. Superior Court, 329 F.2d 154 (C.A.9, 1964) (state judges, district attorney, sheriff, county clerk, probation officer, court trustee, county auditor and county treasurer); Hurlburt v. Graham, 323 F.2d 723 (C.A.6, 1963) (justice of the peace and prosecuting attorney); Puett v. City of Detroit, 323 F.2d 591 (C.A.6, 1963) (municipal judge, assistant prosecuting attorney and corporation counsel); Sires v. Cole, 320 F.2d 877 (C.A.9, 1963) (state judge, prosecuting attorney and deputy prosecuting attorney); Phillips v. Nash, 311 F.2d 513 (C.A.7, 1962), cert. denied, 374 U.S. 809, 83 S.Ct. 1700, 10 L.Ed.2d 1033 (1963) (state's attorney); Gately v. Sutton, 310 F.2d 107 (C.A.10, 1962) (state supreme court judges); Cooper v. Wilson, 309 F.2d 153 (C.A.6, 1962) (private attorney); Wise v. City of Chicago, 308 F. 2d 364 (C.A.7, 1962), cert. denied, 372 U.S. 944, 83 S.Ct. 934, 9 L.Ed.2d 969 (1963) (city prosecuting attorneys); Saier v. State Bar of Michigan, 293 F.2d 756 (C.A.6), cert. denied, 368 U.S. 947, 82 S.Ct. 388, 7 L.Ed.2d 343 (1961) (state supreme court justices); Kostal v. Stoner, 292 F.2d 492 (C.A.10, 1961), cert. denied, 369 U.S. 868, 82 S.Ct. 1032, 8 L. Ed.2d 87 (1962) (state judge and prosecuting attorney); Smith v. Dougherty, 286 F.2d 777 (C.A.7), cert. denied, 368 U.S. 903, 82 S.Ct. 180, 7 L.Ed.2d 97 (1961) (judge, state's attorney and assistant state's attorneys); Johnson v. MacCoy, 278 F.2d 37 (C.A.9, 1960) (judge); Bartlett v. Weimer, 268 F.2d 860 (C.A.7, 1959), cert. denied, 361 U.S. 938, 80 S.Ct. 380, 4 L.Ed.2d 358 (1960) (court appointed doctor); Larsen v. Gibson, 267 F.2d 386 (C.A.9), cert. denied, 361 U.S. 848, 80 S.Ct. 106, 4 L.Ed.2d 87 (1959) (state supreme court justices); Stift v. Lynch, 267 F.2d 237 (C.A.7, 1959) (state's attorney, assistant state's attorney and justice of the peace); Carpenter v. Dethmers, 253 F.2d 131 (C.A.6, 1958) (chief justice and clerk of state supreme court); Gay v. Heller, 252 F.2d 313 (C.A.5, 1958) (state judge and court appointed curator); Cuiksa v. City of Mansfield, 250 F.2d 700 (C.A.6, 1957), cert. denied, 356 U.S. 937, 78 S.Ct. 779, 2 L.Ed.2d 813 (1958) (municipal judge); Holmes v. Henderson, 249 F.2d 529 (C.A.9, 1957) (state court judge); Ryan v. Scoggin, 245 F.2d 54 (C.A.10, 1957) (state judge); Skinner v. Nehrt, 242 F. 2d 573 (C.A.7, 1957) (state judge); Peckham v. Scanlon, 241 F.2d 761 (C.A.7, 1957) (superior court judge, assistant state's attorneys and court reporter); Kenney v. Fox, 232 F.2d 288 (C.A.6), cert. denied sub nom. Kenney v. Killian, 352 U.S. 855, 77 S.Ct. 84, 1 L.Ed.2d 66 (1956) (state judge and prosecuting attorney); Tate v. Arnold, 223 F.2d 782 (C.A.8, 1955) (justice of the peace); Eaton v. Bibb, 217 F.2d 446 (C.A.7, 1954), cert. denied, 350 U.S. 915, 76 S.Ct. 199, 100 L.Ed. 802 (1955) (state's attorney); Jennings v. Nester, 217 F.2d 153 (C.A.7, 1954), cert. denied, 349 U.S. 958, 75 S.Ct. 888, 99 L.Ed. 1281 (1955) (state's attorney); Dunn v. Gazzola, 216 F.2d 709 (C.A.1, 1954) (police officer, superintendent of reformatory and state commissioner of correction acting pursuant to court order); Francis v. Lyman, 216 F.2d 583 (C.A.1, 1954) (commissioners of correction and prison superintendents acting pursuant to judicial decree); Cawley v. Warren, 216 F.2d 74

one of statutory construction and the other of judicial restraint, when applied and coupled with Tenney, clearly indicate that judicial immunity was not abrogated by the Act.

■■■ First, it is well settled that a statute should not be considered in derogation of the common law unless it expressly so states or the result is imperatively required from the nature of the enactment. Mobile Gas Service Corp. v. FPC, 215 F.2d 883 (C.A.3, 1954), aff'd, United Gas Pipe Line Co. v. Mobile Gas Service Corp., 350 U.S. 332, 76 S.Ct. 373, 100 L.Ed. 373 (1956); American District Telegraph Co. v. Kittleson, 179 F.2d 946 (C.A.8, 1950); Scharfeld v. Richardson, 76 U.S.App.D.C. 378, 133 F.2d 340, 145 A.L.R. 980 (1942). There can be little doubt that the concept of judicial immunity is deeply rooted in Anglo-American law. In Yates v. Lansing, 5 Johns, R., (N.Y.) 282, 291 (Sup.Ct. of Judicature, 1810), Chief Justice Kent noted that:

"* * * It [judicial immunity] is to be found in the earliest judicial records, and it has been steadily maintained by an undisturbed current of decisions in the English courts, amidst every change of policy, and through every revolution of their government."

His concluding remarks—that the statute there being construed could not be read as impliedly abrogating judicial immunity—are peculiarly applicable here: "Ought such a sacred principle of the common law * * * be subverted without an express declaration to that effect?" Id. at 296. For a further review of the historical precedents on judicial immunity see Bradley v. Fisher, 80 U.S. (13 Wall.) 335, 347–354, 20 L.Ed. 646 (1871).

■■■ The statute before us also has no express declaration to that effect; nor does the legislative history adequately support the conclusion that Congress intended to dissolve judicial immunity.[8] These factors, when considered in conjunction with the Supreme Court's determination that legislative immunity was not inimical to the purpose of the Act,

---

(C.A.7, 1954) (state's attorney, his first assistant and grand jury foreman); Francis v. Crafts, 203 F.2d 809 (C.A.1), cert. denied, 346 U.S. 835, 74 S.Ct. 43, 98 L.Ed. 357 (1953) (state judge); Woodruff v. City and County of Philadelphia, 38 F.R.D. 468 (E.D.Pa., 1965) (judge and magistrate); Hardy v. Kirchner, 232 F. Supp. 751 (E.D.Pa., 1964) (judge, district attorney and alderman); Ellis v. Wissler, 229 F.Supp. 196 (E.D.Pa., 1964) (judge and district attorney); Ray v. Huddleston, 212 F.Supp. 343 (W.D.Ky., 1963), aff'd, 327 F.2d 61 (C.A.6, 1964) (state judge); Perkins v. Rich, 204 F. Supp. 98 (D.Del., 1962), aff'd per curiam, 316 F.2d 236 (C.A.3, 1963) (judge); Rhodes v. Houston, 202 F.Supp. 624 (D. Neb.), aff'd, 309 F.2d 959 (C.A.8, 1962), cert. denied, 372 U.S. 909, 83 S.Ct. 724, 9 L.Ed.2d 719 (1963) (district judge, prosecuting attorney, clerk of court, and in certain instances law enforcement officers and wardens); Ginsburg v. Stern, 125 F.Supp. 596 (W.D.Pa., 1954), aff'd on other grounds, 225 F.2d 245 (C.A.3, 1955) (chief justice and prothonotary of state supreme court); Morgan v. Sylvester, 125 F.Supp. 380 (S.D.N.Y., 1954), aff'd, 220 F.2d 758 (C.A.2), cert. denied, 350 U.S. 867, 76 S.Ct. 112, 100 L.Ed. 768 (1955) (trial and appellate judges);

Souther v. Reid, 101 F.Supp. 806 (E.D. Va., 1951) (state judge).

8. Our search of the legislative history of R.S. § 1979 bears out the Supreme Court's statement in Tenney, quoted at note 6 supra, that "the limits of §§ 1 and 2 of the 1871 statute * * * were not spelled out in debate." There are, however, two statements by opponents to H.R. 320, the House version of R.S. § 1979, which deserve mention.

Congressman Arthur of Kentucky assailed § 1 of the Bill, stating:

"Hitherto, in all the history of this country and of England, no judge or court has been held liable, civilly or criminally, for judicial acts * * *. Under the provisions of this section every judge in the State court and every officer thereof, great or small, will enter upon and pursue the call of official duty with the sword of Damocles suspended over him * * *." Cong. Globe, 42nd Cong., 1st Sess. (1871) 365–366.

Congressman Lewis, also of Kentucky and another opponent of the Bill, charged that:

"By the first section, in certain cases, the judge of a State court, though acting under oath of office, is made liable to a suit in a Federal court and sub-

lead to the inescapable conclusion that the Act was not intended to be in derogation of the common law.

■ The second basis upon which we ground our conclusion that the traditional concept of judicial immunity remained undisturbed by the enactment of the Civil Rights Act finds its support in the maxims of judicial restraint as classically announced by Mr. Justice Brandeis in Ashwander v. Tennessee Valley Authority, 297 U.S. 288, 341, 56 S.Ct. 466, 80 L.Ed. 688 (1936) (concurring opinion). Characterizing the approach a court should take when confronted with a case such as the one we are presently considering, he stated that:

"* * * [I]f a case can be decided on either of two grounds, one involving a constitutional question, the other a question of statutory construction or general law, the Court will decide only the latter. Siler v. Louisville & Nashville R. Co., 213 U.S. 175, 191 [29 S.Ct. 451, 53 L.Ed. 753]; Light v. United States, 220 U.S. 523, 538 [31 S.Ct. 485, 55 L.Ed. 570]." 297 U.S. at 347, 56 S.Ct. at 483.

This technique was employed by the Supreme Court in Tenney, and the constitutional issue of whether Congress had the power to abrogate legislative immunity was avoided by the Court's conclusion that Congress did not intend to abolish the immunity.

In Tenney, the Court did not spell out the particular constitutional barrier which might be raised to void such Congressional action. Though we would not be compelled to go further, we choose to spell out at least one of perhaps several constitutional questions which would necessarily arise if the Act were construed so as to abrogate judicial immunity.

■ Article 4, § 4 of the United States Constitution provides: "The United States shall guarantee to every State in this Union a Republican Form of Government * * *." The framers of the Constitution clearly evinced their belief that a separate and independent judiciary is an indispensable element of a republican form of government. See The Federalist, pp. 236, 303–305, 488 et seq., 494 et seq. We believe that abrogation of judicial immunity by Congress would

---

ject to damages for his decision against a suitor, however honest and conscientious that decision may be * * *." Id. at 385.

Although these statements appear strong on the surface, under careful scrutiny they stand for little more than opposition remarks. The Supreme Court has recently reiterated the weight which should be accorded such remarks:

"* * * [W]e have often cautioned against the danger, when interpreting a statute, of reliance upon the views of its legislative opponents. In their zeal to defeat a bill, they understandably tend to overstate its reach. 'The fears and doubts of the opposition are no authoritative guide to the construction of legislation. It is the sponsors that we look to when the meaning of the statutory words is in doubt.' Schwegmann Bros. v. Calvert Distillers Corp., 341 U.S. 384, 394–395 [71 S.Ct. 745, 750, 95 L.Ed. 1035]; see also Mastro Plastics Corp. v. National Labor Relations Board, 350 U.S. 270, 288, [76 S.Ct. 349, 350, 100 L.Ed. 309]; United States v. Calamaro, 354 U.S. 351, n. 9, at 358 [77 S.Ct. 1138, 1143, 1 L.Ed.2d 1394]." N.

L. R. B. v. Fruit & Vegetable Packers, Local 760, 377 U.S. 58, 66, 84 S.Ct. 1063, 1068, 12 L.Ed.2d 129 (1964); N. L. R. B. v. Thompson Products, Inc., 141 F.2d 794 (C.A.9, 1944).

Unanimity of those favoring and those opposing legislation is, of course, of greater value. Apex Hosiery Co. v. Leader, 310 U.S. 469, n. 15 at 495, 60 S.Ct. 982, 84 L.Ed. 1311 (1940). The only situation where opponents' statements have relevance is where the proponents made no response to them. State of Arizona v. State of California, 373 U.S. 546, n. 85 at 583, 83 S.Ct. 1468, 10 L.Ed.2d 542 (1963). The circumstances surrounding the debate on H.R. 320, especially as to the two quoted speeches, indicate that responses could not be expected. In the first place, the speeches on the legislation which eventually emerged as R.S. § 1979 consume hundreds of pages of the Congressional Globe. Even more important is that the two statements quoted above were made at times when response would have been unlikely. The first was made at a night session, while the second was delivered during a Saturday session.

destroy the independence of the judiciary in the various States, and consequently deprive them of a republican form of government. The language of the Supreme Court in Bradley v. Fisher, 80 U.S. (13 Wall.) 335, 347, 20 L.Ed. 646, lends support to our conclusion.

" * * * [I]t is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself. Liability to answer to everyone who might feel himself aggrieved by the action of the judge, would be inconsistent with the possession of this freedom, and *would destroy that independence without which no judiciary can be either respectable or useful.*" (Emphasis added.)

■ Our belief that the Act would violate the Guarantee Clause if construed to abrogate judicial immunity does not necessarily mean that either this court or the Supreme Court would have the power to remedy the wrong. The Supreme Court has held in a long line of cases, beginning with Luther v. Borden, 48 U.S. (7 How.) 1, 12 L.Ed. 581 (1849), that Congress is charged with the enforcement of Art. 4, § 4. Alleged violations of this clause have been held to present "political questions" which are non-justiciable. See Baker v. Carr, 369 U.S. 186, 218–226, 82 S.Ct. 691, 7 L.Ed. 2d 663 (1962). Even if this case fell within that class labelled "non-justiciable," we believe that would be all the more reason why we should not impute to Congress the intention to blatantly violate that trust.

Despite the wealth of cases holding Art. 4, § 4 violations to be non-justiciable, we think that none would govern the instant case. The numerical weight of those cases have involved state action, but as the Court pointed out in Baker v. Carr, supra, challenges to Congressional action based upon the clause have likewise been held non-justiciable. Id. at 224–225, 82 S.Ct. 713–714. The cases cited by the Court, however, involve extraordinary circumstances which would not be present if the Civil Rights Act were construed to abolish judicial immunity. The absence of any overbearing political factor and the presence of substantial precedent to serve as criteria might well require a whole new analysis of the Guarantee Clause and non-justiciability. Fortunately, our task is only to state the problem, not to resolve it. Compare the majority opinion in Baker v. Carr with Pacific States Tel. & Tel. Co. v. State of Oregon, 223 U.S. 118, 32 S.Ct. 224, 56 L.Ed. 377 (1912); compare the concurring opinion of Douglas, J., 369 U. S. at 241, 82 S.Ct. at 723, with the dissenting opinion of Frankfurter, J., id. at 266, 82 S.Ct. at 737.

The construction we place on the Civil Rights Act not only avoids this constitutional issue, but is also in accord with the Court's mandate that in Civil Rights Act cases the "lodestar of adjudication has been that the statute 'should be construed so as to respect the proper balance between the States and the federal government * * *.'" Stefanelli v. Minard, 342 U.S. 117, 121, 72 S.Ct. 118, 121, 96 L.Ed. 138 (1951). See also Note, 68 Harv.L.Rev. 1229, 1231 (1955); Note, 36 Ind.L.J. 317, 334–335 (1961).

■ In deciding the question of whether a prosecuting attorney is liable for acts done in his official capacity, we must decide whether his duties are sufficiently judicial as to cloak him with the same immunity afforded judges or are so closely related to those duties of law enforcement officials as to amerce him with potential civil liability for his imprudent actions. See Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed. 492 (1961); Comment, 18 Ark.L.Rev. 81, 84–92 (1964). Analogy could support either conclusion, but we believe that both reason and precedent require that a prosecuting attorney should be granted the same immunity as is afforded members of the judiciary. The reasons are clear: his primary responsibility is essentially judicial—the prosecution of the

guilty and the protection of the innocent, Griffin v. United States, 295 F. 437, 439–440 (C.A.3, 1924); his office is vested with a vast quantum of discretion which is necessary for the vindication of the public interest. In this respect, it is imperative that he enjoy the same freedom and independence of action as that which is accorded members of the bench.[9] This reasoning is nearly as well established in Anglo-American law as judicial immunity itself. Yaselli v. Goff, 12 F.2d 396 (C.A. 2, 1926), aff'd, per curiam "on the authority of Bradley v. Fisher *. * * [and] Alzua v. Johnson, 231 U.S. 106, 111 [34 S.Ct. 27, 58 L.Ed. 142]," 275 U.S. 503, 48 S.Ct. 155, 72 L.Ed. 395 (1927), and numerous cases and authorities cited therein. Prosecuting attorneys who have been sued under the Civil Rights Act, R.S. § 1979, have likewise been held immune. Laughlin v. Rosenman, 82 U.S.App.D.C. 164, 163 F.2d 838 (1947); Kenney v. Fox, supra, and other cases cited in note 7, supra.

The case of Egan v. City of Aurora, 365 U.S. 514, 81 S.Ct. 684, 5 L.Ed.2d 741 (1961), does not require a contrary result. In that Civil Rights Act case, the Supreme Court in a per curiam opinion affirmed in part and vacated and remanded to the court of appeals the causes against certain individual defendants (one of whom was corporation counsel for the City of Aurora, see Egan v. City of Aurora, 275 F.2d 377, 378 (C.A.7, 1960)) because the opinion of the Court of Appeals was "not explicit as respects the grounds for dismissing the complaint * * *." 365 U.S. at 515, 81 S.Ct. at 685. This disposition, especially since the Court failed to expressly mention corporation counsel as an individual defendant, can hardly be cited for the proposition that a prosecuting attorney is not immune.[10]

■■■■■ The immunity of a prosecutor, however, is not without limitation; it is not absolute. The immunity of judges, from which the immunity of prosecutors is derivative, does not extend to acts which are clearly outside their jurisdiction. In Bradley v. Fisher, 80 U.S. (13 Wall.) 335, 351–352, the Supreme Court established the guidelines for determining the scope of judicial immunity:

"* * * [J]udges of courts of superior or general jurisdiction are not liable to civil actions for their judicial acts, even when such acts are in excess of their jurisdiction, and are alleged to have been done maliciously or corruptly. A distinction must be here observed between excess of jurisdiction and the clear absence of all jurisdiction over the subject-matter. Where there is clearly no jurisdiction over the subject-matter, any authority exercised is a usurped authority, and for the exercise of such authority, when the want of jurisdiction is known to the judge, no excuse is permissible. * * * Thus, if a probate court, invested only with authority over wills and the settlement of estates of deceased persons, should proceed to try parties for public offences, jurisdiction over the subject of offences being entirely wanting in the court, and this being necessarily known to its judge, his commission would afford no protection to him in the exercise of the usurped authority.

---

9. We find the traditional arguments in support of immunity applicable here; they are "(1) the danger of influencing public officials by threat of a law suit; (2) the deterrent effect of potential liability on men who are considering entering public life; (3) the drain on the valuable time of the official caused by insubstantial suits [which would require inordinate private record keeping, Bradley v. Fisher, 80 U.S. (13 Wall.) at 349]; (4) the unfairness of subjecting officials to liability for the acts of their subordinates; (5) the theory that the official owes a duty to the public and not to the individual; (6) the feeling that the ballot and the formal removal proceeding are more appropriate ways to enforce honesty and efficiency of public officers." Note, 66 Harv.L.Rev. 1285, 1295, n. 54 (1953).

10. The failure of the Seventh Circuit to remand to the district court the cause against the corporation counsel substantiates this position. 291 F.2d 706 (1961); see also Phillips v. Nash, 311 F.2d 513 (C.A.7, 1962), cert. denied, 374 U.S. 809, 83 S.Ct. 1700, 10 L.Ed.2d 1033 (1963).

But if on the other hand a judge of a criminal court, invested with general criminal jurisdiction over offences committed within a certain district, should hold a particular act to be a public offence, which is not by the law made an offence, and proceed to the arrest and trial of a party charged with such act, or should sentence a party convicted to a greater punishment than that authorized by the law upon its proper construction, no personal liability to civil action for such acts would attach to the judge, although those acts would be in excess of his jurisdiction * *."

The clear-absence-versus-mere-excess-of-jurisdiction distinction has, in substance, been adopted and applied in Civil Rights Act cases brought against judges and other judicial officers. Robichaud v. Ronan, 351 F.2d 533 (C.A.9, 1965); Corsican Productions v. Pitchess, 338 F.2d 441 (C.A.9, 1964); Spires v. Bottorff, 317 F.2d 273 (C.A.7, 1963); Lewis v. Brautigam, 227 F.2d 124, 55 A.L.R.2d 505 (C.A.5, 1955). Because immunity is conferred on an individual solely by virtue of the office he holds, reason requires us to adopt a rule which does not provide immunity for those acts which are done clearly outside the authority or jurisdiction of the office.

▮ Accepting, as we must, the truth of the allegations as pleaded in appellant's complaint, we now proceed to examine those facts within the legal framework we have set forth above. The main thrust of the complaint is that the defendant knew or should have known that appellant had not reached the age of eighteen when the alleged offenses were committed, and that in procuring the indictments against him and the resulting

pleas, sentences and incarceration, appellant was denied his liberty without due process. Assuming arguendo that this denial of liberty and the denial of a speedy trial abridged appellant's constitutional rights,[11] so as to bring him within 42 U.S.C. § 1983 in that regard, we cannot perceive that the defendant acted clearly outside his jurisdiction in either matter.

▮ We have already indicated that the primary responsibility of a prosecutor is to vindicate the wrongs which have been committed against society. This is precisely what appellee was doing when the denial of appellant's liberty occurred. The mere fact that the New Jersey Legislature had excised from his responsibility the prosecution of individuals who were under the age of eighteen when they committed acts which would otherwise be punishable offenses does not indicate that he was acting clearly outside his jurisdiction. On the contrary, it would be difficult to envision a case which was as close to his jurisdiction, but, yet, in excess of it.

As to the denial of a speedy trial, even if we assume that the defendant was responsible for the delay, we believe that motions for continuances or other causes of delay are well within the jurisdiction of the prosecutor.

▮ Having decided these substantive questions, one further matter remains for our consideration. As this case comes before us, its posture is not greatly dissimilar from that of Tenney v. Brandhove, as it came before the Ninth Circuit, 183 F.2d 121 (1950), and the Supreme Court, 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019. The district court in Tenney had dismissed the complaint

11. We think it highly unlikely that defendant's failure to proceed in accordance with the New Jersey statute, N.J.Stat. Ann. 2A:4–14—4–15, in and of itself, resulted in a denial of due process; nor would this appear to give rise to a denial of equal protection. But see Miller v. Rhay, 86 S.Ct. 1346, cert. granted, April 4, 1966, 34 L.W. 3341.

We also believe that appellant's denial of a speedy trial probably did not violate

his constitutional rights. See Ciesielski v. Ohio, 383 U.S. 411, 86 S.Ct. 1066, 15 L.Ed.2d 841, appeal dismissed March 7, 1966; United States ex rel. Von Cseh v. Fay, 313 F.2d 620 (C.A.2, 1963) and cases and authorities cited therein; see also United States v. Ewell, 383 U.S. 116, 86 S.Ct. 773, 15 L.Ed.2d 627 (Feb. 23, 1966).

for failure to state a cause of action. The Supreme Court reversed the Ninth Circuit and affirmed the district court's dismissal for failure to state a cause of action. We likewise affirm the judgment of the district court on the grounds that the complaint fails to state a cause of action.

The judgment of the district court will be affirmed.

KALODNER, Chief Judge (concurring in the result).

I concur in the overruling of our holding in Picking v. Pennsylvania R. Co., 151 F.2d 240 (3 Cir., 1945).

I also concur in the affirmance of the District Court's Order dismissing the Complaint for the sole reason that in my opinion the sweep of the Civil Rights Act, 42 U.S.C.A. Sec. 1983, R.S. Sec. 1979 does not extend to a cause of action such as that which the Complaint asserts.

Since I am of the view that the Complaint fails to state a cause of action under the Civil Rights Act, I do not reach the majority's holding with reference to the extension of the doctrine of "judicial immunity" to prosecuting attorneys.

HASTIE, Circuit Judge (concurring in the result).

I agree that Picking v. Pennsylvania Railroad, 3d Cir., 1945, 151 F.2d 240, should be overruled. But I do not share the view of the majority that the doctrine of "judicial immunity" protects whatever acts of a public prosecutor are "done in his official capacity" or are not "clearly outside his jurisdiction".

However, I am satisfied that the present complaint, charging a prosecutor with erroneously prosecuting the plaintiff as an adult when he should have known that the plaintiff was under the age of 18, does not state such a deprivation of a federally secured right as is comprehended by the original Civil Rights Act, 42 U.S.Code § 1983, formerly R.S. § 1979, upon which this claim is predicated.

Thus, I agree that the complaint here fails to state a cause of action, but for a reason different from that upon which the majority place principal reliance.

BIGGS, Circuit Judge (dissenting).

There are two issues presented by this appeal: first, is the defendant, County Prosecutor Heisel, immune from suit brought under the Third Civil Rights Act, 42 U.S.C. § 1983, R.S. § 1979, and, second does the complaint state a cause of action against him?

To deal with the second question first, I had thought that this was answered adequately and in the plaintiff-appellant's favor by our decisions in Basista v. Weir, 340 F.2d 74 (1965), and Anderson v. Haas, 341 F.2d 497 (1965). In the Anderson case Chief Judge Staley concluded, id. at 502, that the contention of the police officers that they acted in good faith and without malice could be no defense in a civil action brought under Section 1983. But surely and very finally the scope of the Civil Rights Acts has been defined in United States v. Price, 86 S.Ct. 1152 (1966), and the opinion of the Supreme Court in Price certainly is not in accord with the opinion of this court and requires reversal of this tribunal's decision unless Prosecutor Heisel be found to be immune from a suit such as that at bar. By its Price decision the Supreme Court has revitalized the "Reconstruction" Civil Rights Acts.

In respect to the immunity issue it was pointed out in Picking v. Pennsylvania R. Co., 151 F.2d 240, 250 (3 Cir. 1945), now expressly overruled by this court, that the phrase "every person" of Section 1983 and the phrase "any person" of Section 1 of the Third Civil Rights Act, Act of April 20, 1871,[1] were purposely made as broad in definition as was possible.

On reading the legislative history of the Civil Rights Acts I find it is impossible to conclude that Congress created any barrier of state office, other than legislative, behind which federal power, con-

1. Act of April 20, 1871, 17 Stat. 13.

ferred by the Acts, was not intended to reach.[2] The legislative history of the Third Civil Rights Act alone makes this plain.[3] The statements of Senator Pool, Appendix to the Price opinion, 86 S.Ct. at 1163, et seq., directed to the Enforcement Act of 1870, 16 Stat. 140, and the Enforcement Act itself, are illuminating. Mr. Justice Fortas points out in his opinion, id. 86 S.Ct. at 1161, that the Enforcement Act "included a reenactment of a provision of the Civil Rights Act of 1866 which is now [18 U.S.C.] § 242". I think that all of the Civil Rights Acts must be deemed to have been based on the same congressional considerations and that the rights secured and protected by the Acts are the same in scope whether they are to be enforced by criminal or civil sanctions. I conclude, therefore, that Senator Pool's statement in respect to the Enforcement Act are pertinent in construing the statute *sub judice.*

Senator Pool, after referring briefly but emphatically to the conditions which had brought Congress to the enactment of the First Civil Rights Act, 14 Stat. 27, stated: "There is no legislation that could reach a State to prevent its passing a law [in denigration of the First Civil Rights Act]. It [federal legislation] can only reach the individual citizens of the State in the enforcement of law. You have, therefore, in any appropriate legislation, to act on the citizen, not on the State. If you pass an act by which you make it an indictable offense for an officer to execute any law of the State by which he trespasses upon any of these

rights of the citizen it operates upon him as a citizen, and not as an officer."

The last sentence quote, in my view, indicates that Congress intended the Civil Rights Acts to be applicable to every person as citizen and not as state officer. An official action offending the Acts must be deemed to have been committed by a citizen *qua* citizen.[4] Under such a view there can be no immunity by virtue of state office, legislative office excepted. The view expressed in the preceding paragraph seems to be in accord with the pronouncement of Mr. Justice Fortas in the Price opinion, id. 86 S.Ct. at 1163, as follows: "He [Senator Pool] acknowledged that the States as such were beyond the reach of the punitive process, and that legislation must therefore operate upon individuals. He made it clear that 'It matters not whether these individuals be officers or whether they are acting upon their own responsibility.' We find no evidence whatever that Senator Pool intended that § 241 should not cover violations of Fourteenth Amendment rights, or that it should not include State action or actions by state officials." At an earlier point in respect to the reach of 18 U.S.C.A. § 241, Mr. Justice Fortas stated: "We find no basis whatsoever for a judgment of Solomon which would give to the statute less than its words command." I can entertain no doubt that prosecutors are "commanded" by "words".

The majority opinion contains the interesting suggestion based upon Article IV, Section 4, of the Constitution, that the Acts would be unconstitutional if the

2. I think that this court's reliance on Tenney v. Brandhove, 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019 (1951), is misplaced. In the cited case, the Supreme Court was dealing with the liability of members of the California Legislature under the Civil Rights Acts embraced by 8 U.S.C. §§ 43 and 47(3), and not with the liability of state law enforcement officers. Compare Eastern R. R. Presidents Conf. v. Noerr Motors, 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961), in which the Supreme Court adjudicated rights of parties under §§ 1 and 2 of the Sherman Act and § 4 of the Clayton Act.

3. For the legislative history of the Third Civil Rights Act, see The Congressional Globe, 42nd Congress, 1871, First Session, Part 1, report on H.R. No. 320, p. 317 and debate, pp. 385, 395, 461 and 495, and Part 2, Appendix, pp. 86, 113, 209 and 216–217.

4. With the exception of a citizen who is a legislative officer in accordance with the principles enunciated in Tenney v. Brandhove, 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019 (1951), as stated previously in the body of this opinion.

construction put upon them in this dissenting opinion is correct. The theory espoused by the majority is that immunity is a basic right of the judiciary under the doctrine of separation of powers, and that any attempt by Congress to limit or abolish that immunity would unconstitutionally encroach on the judicial branches of our state governments so that a republican form of government would no longer exist. I agree that the principle of judicial immunity is part of the Anglo-American law. It was created by judicial decisions for policy reasons. See, for example, Yaselli v. Goff, 12 F.2d 396 (2 Cir. 1926). But the principle of judicial immunity, judge made, cannot raise a constitutional issue as the majority asserts. A principle established by decisional law can be overturned by an act of Congress or of a legislature. But aside from the foregoing, we are concerned here with immunity of a prosecutor, not with that of a judge, though the majority opinion by way of *dicta* seems to extend immunity not only to judges but also to police officers, albeit with a jurisdictional qualification as to the latter which I believe is inoperable or nonexistent. That police officers do not have immunity in civil rights suits was decided by Monroe v. Pape, 365 U.S. 167, 184–185, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961).

Assuming that an issue of constitutionality is reached here it should be decided only upon a full record and only if necessary. See Villa v. Van Schaick, 299 U.S. 152, 155–156, 57 S.Ct. 128, 81 L.Ed. 91 (1936), and Honeyman v. Hanan, 300 U.S. 14, 25–26, 57 S.Ct. 350, 81 L.Ed. 476 (1937). The fact is that the present decision emasculates the Civil Rights Acts in the Third Circuit. This is unfortunate for there is need for them in this Circuit as elsewhere.

For these reasons, I must respectfully dissent.

FREEDMAN, Circuit Judge (dissenting).

I am not prepared to hold that a prosecutor, as such, enjoys the full privilege of a judicial officer. A prosecutor, although a public official, is in the actual trial of a case simply the government's lawyer, just as his adversary is the defendant's lawyer. Both of them are bound by the standards of professional ethics, although the prosecutor often is called a quasi-judicial officer, a characterization which describes his obligation to his client, the State, not to seek to win a case against an innocent defendant or to win a good case by unfair means.

I would not equate the trial conduct of a prosecutor with the adjudicatory role of a judge, whose duties involve a process so delicate that it would be undesirable to subject him to inquiry by suit under the Civil Rights Act. An advocate stands in a totally different position and I do not believe that the state's advocate should be any more immune than the defendant's advocate, who is licensed by the State, or its police officers. I therefore dissent from the view that a prosecutor is in all cases immune from liability under the Civil Rights Act.

On the other hand, there may well be aspects of the duties of a prosecutor in which he must exercise his judgment in a manner which is truly quasi-judicial in nature. That area therefore should be included within the scope of a partial, quasi-judicial immunity. The prosecutor's decision as to the appropriate court in which prosecution should be had is a matter in which I would hold a prosecutor immune unless there appears an intentional and malicious abuse of his authority.[1] It is in such an area, and to this extent only, that I would give recognition to the quasi-judicial aspect of the prosecutor's function.

1. Cf. Dombrowski v. Pfister, 380 U.S. 479, 490, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965), where the Court said that a claim under the Civil Rights Act was made out where it was alleged that state officials, including the attorney general, a district attorney and a member of the legislature, had invoked and were threatening to invoke criminal proceedings in bad faith and without any hope of success, but only to discourage plaintiffs' civil rights activities.

In the present case the complaint is not made against the prosecutor's conduct in the trial of the case, but rather in his choice of the court before which the plaintiff should be tried. This charge appears to me to fall within an area of partial immunity. However, since this boundary between partial immunity and full liability would now be delineated for the first time and since we are dealing with an inartistically drawn complaint framed by a layman pro se, I would not dismiss it finally but would afford the plaintiff an opportunity to amend in the court below.[2]

I am reinforced in this view by the circumstances in which the decision below was rendered. As the record comes to us the district judge simply entered an order directing the dismissal of the complaint because the court had no jurisdiction and at the same time ordered the clerk to file the complaint together with the order of dismissal. As we pointed out in Urbano v. Calissi, 353 F.2d 196 (3d Cir. 1965), where a similar order was entered and where, as here, no service was made on the defendants, plaintiff is entitled to an opportunity to be heard in the court below and defendants have appropriate means under the Rules of Civil Procedure to move for the dismissal of the action or for summary judgment. Thereafter we will have the benefit of the conclusion the district judge arrived at after hearing the contending parties on the jurisdictional question and if need be, on the merits.[3] This procedural requirement seems to me especially desirable in so significant a question as the scope of a prosecutor's immunity from liability under the Civil Rights Act.

I would therefore vacate the dismissal of the complaint and remand the cause for proceedings in the regular course of litigation under the Rules of Civil Procedure.

2. The complaint alleges that the defendant "knew or should have known" that plaintiff was not yet eighteen years of age at the time of the commission of the alleged offenses and therefore was a juvenile subject to the exclusive jurisdiction of the juvenile and domestic relations court. It also alleges that "defendant's malicious disregard for the aforesaid duties of his office caused plaintiff to be denied a speedy trial", notwithstanding five letters from plaintiff over a period from approximately May, 1951 to April, 1953, all requesting speedy trial.

3. We said in Urbano: "It appears that none of the defendants has been served with the complaint. There is therefore no party defendant of record in the proceeding. As a result, when the case was submitted to us on appeal there were no appellees before the court. In a case of this kind it is desirable that the action be permitted to proceed in the customary manner. Plaintiff was entitled to an opportunity to be heard on the legal questions involved in the court's conclusion that the complaint should be dismissed. See Harmon v. Superior Court, 307 F.2d 796 (9 Cir. 1962). The defendants have appropriate means under the Rules of Civil Procedure to move for the dismissal of the action or for summary judgment. At that time both sides will have full opportunity to present their contentions and whatever conclusion the District Judge may arrive at on the merits (See Sheridan v. Williams, 333 F.2d 581 (9 Cir. 1964)) will have the benefit of the views of the contending parties on the merits and on the jurisdictional question."