HADLEY, J., I respectfully dissent from the majority which has gratuitously found it necessary to analyze R.C. 2323.52 and found it to be "violative of Ohio Const. Art. I Sec. 16" because the statute "fails to provide a reasonable and meaningful substitute for direct access to Ohio's trial courts."
We learned of appellant's plea agreement in State v. Bristow
(June 1, 1998), Crawford App. No. 98 CV-82, unreported, 1999 WL 254098, wherein appellant wanted to withdraw his guilty pleas to his fourteen counts of telephone harassment because the trial court failed to advise him of his constitutional rights and to inform him of the nature of the offenses in violation of his due process rights. We said that res judicata barred consideration of his assignments of error because he could have raised the issues on his first appeal. In any case, we learned then that appellant had entered into a plea agreement that resulted in his stating,
"* * * that I on the record would admit to being a vexatious litigator * * *."
In the present case, appellant again states that he agreed to such a classification and that as such he knew that he was to seek leave of the Crawford County Court of Common Pleas before commencing an action in any court inferior to the courts of appeals. Appellant does not contest his portion of that agreement and he did not appeal the June 1, 1998 finding that he is a vexatious litigator. See appellant's Written Presentation in Lieuof Oral Argument.
When appellant arrived in prison, he wrote to individuals and told them very bluntly that he was "piecing together the largest lawsuit campaign in history against the sheriff, his deputies and their families." He further stated that "I get my rock(s) off showing you that you cannot beat me, and you sure as well will never, ever stop me. Do what you must Jerry, what's coming down the pike will forever bury you, your family, your deputies and their families for the next 25 years. I have already vowed to sue you until the day they put you 6 feet under, then, I'm gonna sue your estate."
True to his word, by 1998, appellant had filed a number of lawsuits all over Ohio and the United States. In 1995, in the Northern District of Ohio, U.S. District Judge David Dowd, Jr. found as follows:
 * * * The uncontroverted evidence in the record establishes that Bristow has filed thirty-nine (39) lawsuits in this court against various defendants without paying any fees or costs due in his in forma pauperis status. Most of these actions are directed at Richland County officials and employees, but others include victims of his telephone harassment. * * * Bristow used filing complaints as a source of amusement to pass his time in jail at the expense of defendants and the taxpayers.
 * * * Mr. Bristow's new-found weapon-filing merit-less claims-has resulted in exorbitant expense to the named defendants and the taxpaying public. Through the abuse of the in forma pauperis device, Bristow attempts to make a mockery of the judicial system.
 * * * Bristow has filed thirty-nine (39) actions arising out of the same set of facts, and through this experience, he has learned how to circumvent the pre-screening process. Although he knows he will never win a judgment, he gets revenge each time the defendants pay their attorney fees and court costs. For the cost of a stamp, Bristow has found a way to inflict his revenge on the defendants and the general taxpaying public. The only effective and fair way to curb his abuse is to take away the procedural privilege that he has twisted into a weapon. (June 6, 1995 Memorandum Opinion and Order, Case No. 5:93 CV 2698).
In this case the trial court on July 30, 1998 imposed an order restricting appellant's mail privileges in any institution. This caused the Department of Rehabilitation and Correction some concern and the trial court followed that up with the August 20, 1998 order to clarify the previous order. It is from this order that the appeal has been taken.
The majority does not seem to have trouble with the mail restriction but has seen fit to gratuitously "analyze" R.C.2323.52 and conclude that the appellant does not receive due process of law as a result of that statute, an issue not raised directly on appeal by appellant. Even if appellant had not consented to the vexatious litigator title and had raised the constitutional issue at this time, it is well settled that an issue first raised on appeal need not be heard.
Further, unlike the majority, appellant is not troubled by R.C. 2323.52 and states in his Written Presentation in Lieu ofOral Argument, "The vexatious litigator order does not prohibit me from suing anyone. I must ask permission first."
As pointed out by the court in Central Ohio Transit Authorityv. Timson (Dec. 24, 1998), Franklin App. No. 98AP-509, unreported, 1998 WL 894817, all legislative enactments enjoy a presumption of constitutionality. That Court also pointed out that a legislative enactment is deemed valid on due process grounds if it bears a real and substantial relation to the public health, safety, morals or general welfare and if it is not unreasonable or arbitrary.
The vexatious litigation statute is designed to prevent the abuse of the judicial system by those who persistently and habitually file lawsuits without reasonable grounds and/or otherwise engage in frivolous conduct. As such, it bears a substantial relation to the general public welfare. It is not unreasonable or arbitrary because it only applies to those who engage in harassing, unfounded lawsuits.
While legislation that abolishes or impairs "open courts" can be found to be invalid unless a reasonable substitute is provided, the procedure set forth in R.C. 2323.52 does provide for such a substitute and also provides it in a meaningful time and manner. As appellant points out, he is not precluded from bringing suit, he just must first obtain leave of court that the proposed action is not an abuse of process and that there are reasonable grounds for the lawsuit.
The 10th District Court of Appeals did not have trouble with this concept in Timson, supra, nor did the 1st District in Detersv. Briggs (December 31, 1998), Hamilton App. No. C-971033, unreported, 1998 WL906405.
The procedure set forth in R.C. 2323.52 is not unlike the procedure in R.C. 2743.02 considered to be reasonable and not unconstitutional by The Ohio Supreme Court in Conley v. Shearer
(1992), 64 Ohio St.3d 284. That statute requires one to pursue an action in the Court of Claims as a condition precedent to an action in a common pleas court against a state employee. Interestingly, speaking on immunity, that case cited Judge Learned Hand in Gregoire v. Biddle (C.A.2, 1949), 177 F.2d 579, 581, as follows:
 The justification * * * is that it is impossible to know whether the claim is well founded until the case has been tried, and that to submit all officials, the innocent as well as the guilty, to the burden of a trial and to the inevitable danger of its outcome, would dampen the ardor of all but the most resolute, or the most irresponsible, in the unflinching discharge of their duties.
The Court in speaking concerning the public policy reasons behind the statute supporting immunity for public officials went on to quote The United States Court of Appeals for the Third Circuit from Bauers v. Heisel (C.A.3, 1966), 361 F.2d 581:
 (1) The danger of influencing public officials by threat of a law suit; (2) the deterrent effect of potential liability on [people] * * * who are considering entering public life; (3) the drain on the valuable time of the official caused by insubstantial suits [which would require inordinate private record keeping * * * ]; (4) the unfairness of subjecting officials to liability for the acts of their subordinates; (5) the theory that the official owes a duty to the public and not to the individual; (6) the feeling that the ballot and the formal removal proceeding are more appropriate ways to enforce honesty and efficiency of public officers.
Thus the public policy for R.C. 2323.52 parallels the reasoning for the R.C. 2743.02 immunity statute.
The majority also finds troubling the vesting of the authority in one trial court to make the determination to proceed with a lawsuit in another jurisdiction. The majority feels that the trial courts are left with no guidance to determine what "reasonable" and other legal terms mean in making the determination on motions by a vexatious litigator to proceed with his suit and that summary denial may be subject to abuse. Obviously, The Supreme Court of Ohio did not have the same problem in Conley v. Shearer, supra, in finding that the Court of Claims was able to screen immunity cases as a prerequisite for the trial courts all over the State and, further, in finding that the statute is procedural in nature and thus does not violate any substantive rights.
Any abuse by a trial court would be subject to correction by an original action in appellate or federal court. The majority foresees that the record in such a case would not be reviewable as the duties of the trial court are undefined. R.C. 2323.52 clearly states that the trial court determine that the proceedings or applications are not an abuse of process and that there are reasonable grounds for the proceedings. Such terms are not totally foreign to legal practitioners and have been amenable to simple interpretations and review in the past.
The majority, like the court in Timson, supra, attacks the statute because of the language in (G):
 (G) During the period of time that the order entered under division (D)(1) of this section is in force, no appeal by the person who is the subject of that order shall lie from a decision of the court of common pleas under division (F) of this section that denies that person leave for the institution or continuance of, or the making of an application in, legal proceedings in the court of claims or in a court of common pleas, municipal court, or county court.
As Justice Douglas pointed out in Atkinson v. Grumman OhioCorp. (1988), 37 Ohio St.3d 80, 84, the United States Supreme Court has long held that a "right" to appeal is not found in the Constitution. Nor is one found in the Ohio Constitution. R.C.2505.03 does provide that every final order may be reviewed"unless otherwise provided by law". And, of course, once the appellate process kicks in, litigants cannot be deprived of review by not being granted due process of law.
Section 3(B)(2) of Article IV of the Constitution of Ohio provides:
 Courts of appeals shall have such jurisdiction as may be provided by law to review and affirm, modify, or reverse judgments or final orders of the courts of record inferior to the court of appeals within the district and shall have such appellate jurisdiction as may be provided by law to review and affirm, modify, or reverse final orders or actions of administrative officers or agencies.
R.C. 2323.52 contains language that amounts to one of those "otherwise provided by law" situations by providing that there is no appeal from a refusal to grant leave to a vexatious litigator who has not shown that his case is not an abuse of process and that his cause presents reasonable grounds to proceed. Thus there is no violation of due process as found by the majority and byTimson because there is no "right" to appeal.
It could further even be said that the action by the trial court in determining whether to grant leave to a vexatious litigator to proceed with litigation is purely an executive or administrative action, not involving the exercise of judicial power. Such authority is akin to the discretionary determination of a prosecutor or grand jury considering the indictment process. Not being judicial in nature, the fact that there is no appeal is not violative of the Constitution. Ohio Assn. Of Pub. Sch. Emp. v.Lorain Cty. (1991), 72 Ohio App.3d 74.
A statute does enjoy a presumption of constitutionality and only if unconstitutionality is shown beyond a reasonable doubt can the statute be declared invalid. The majority attempts to point out weaknesses in what might not be a perfectly drafted statute but it has not shown beyond a reasonable doubt that this statute is unconstitutional.
While I do find that the statute is constitutional, I also find that the trial judge in this matter has exceeded his authority in mandating that "any mail from Lonny Lee Bristow that is addressed to any court other than to [the trial court] shall be forwarded to this Court for a determination as to its disposition." R.C. 2323.52(D)(1) reveals that a common pleas court which adjudicates a person to be a vexatious litigator may only enter an order prohibiting that person from instituting legal proceedings in the court of claims or in a court of common pleas, municipal court, or county court. Thus, the order of the Crawford County Court of Common Pleas is overbroad because it prohibits a vexatious litigator from instituting a legal proceeding or action in a court other that those enumerated in the statute.
For the foregoing reasons, I respectfully dissent, and would affirm in part and reverse in part the decision of the trial court.