Paul EGAN, Plaintiff-Appellant,

v.

CITY OF AURORA, a Municipality under the laws of the State of Illinois, Leo Boucon, William G. Konrad, H. A. Wyeth, Sr., William B. Robertson, Donald Curran, Hershell Stover, LeRoy Straud, Anthony Rukas, John (Jack) Pfiefer, Ray Schuhow, John Day and Charles Darling, Defendants-Appellees.

No. 12738.

United States Court of Appeals
Seventh Circuit.

March 4, 1960.

Sol R. Friedman, Joseph Keig, Sr., I. Stephen Friedman, Edwin R. Armstrong, Chicago, Ill., for appellant.

William C. Murphy, Reid, Ochsenschlager, Murphy & Hupp, Aurora, Ill. (L. M. Ochsenschlager, Aurora, Ill., of counsel), for defendants-appellee.

Before HASTINGS, Chief Judge, DUFFY, Circuit Judge, and STECKLER, District Judge.

DUFFY, Circuit Judge.

Plaintiff is the Mayor of the City of Aurora, Illinois. He brought this suit charging violation of the Federal Civil Rights Statutes, Title 42 U.S.C.A. §§ 1983 and 1985, and claims damages in the amount of $5,000,000.00.

The complaint alleges that plaintiff, as Mayor, was conducting a public meeting before a group in excess of two hundred people in the Council Chambers in the City of Aurora, when defendant Donald Curran, purporting to be acting as Chief of Police of the City of Aurora, and defendants Stover, Straud, Rukas, Pfiefer, Schuhow and Day, all purporting to be police officers of the City of Aurora, without probable cause, arrested plaintiff under color of an Illinois breach-of-the-peace statute, and incarcerated him in the city jail for a period of more than four hours. Plaintiff alleges such action was the result of a conspiracy between the above-named defendants and defendants Boucon, Konrad, Wyeth and Robertson, acting as individuals and as city commissioners of the City of Aurora, and Charles Darling who purported to be Corporation Counsel of the City of Aurora, to deprive plaintiff of his rights to freedom of speech and assembly.

The complaint was later amended by adding the following: "The defendants in all matters and things herein alleged acted with the design and purpose of depriving the plaintiff of his rights under the Fourteenth Amendment of the Constitution of the United States to freedom of speech and freedom of assembly."

Defendants moved to dismiss the action because the complaint as to each of them failed to state a claim upon which relief can be granted. Another ground of the motion to dismiss was that the District Court had no jurisdiction over the subject matter, and that the alleged claim was frivolous. In the alternative the motion also asked the Court to strike specified paragraphs of the complaint. The motion referred to portions of a "proclamation" issued by plaintiff on October 13, 1958, the day prior to the date of the meeting.

Defendants offered and filed a copy of the proclamation issued by the Mayor, and an affidavit which alleged, in part, that the Mayor was attempting to incite a public disturbance pursuant to a program of obtaining personal publicity for himself. A counter-affidavit was offered and filed by plaintiff Egan. The District Court, without a trial, directed judgment for the defendants.

Rule 12(b) provides: "If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56 * * *." We shall so consider the issues before us for decision.

There is no dispute that on the day before the meeting, the Mayor did issue a proclamation in manner and form as follows:

"Proclamation

"Whereas;

"A dire emergency exists in Aurora which might spread very conceivably thru out the world, when it is demonstrated openly and conclusively that the power of the people in the choice of their executive can be surmounted and destroyed to the great disadvantage of most of the people including those who did not vote for the head of the government, and such blinking and ignoring the basic and vital things in Aurora, the State of Illinois and the Great formerly idealistic and marvelous Government of the United States of America which from its inception until about 45 years ago was the almost holy light of downtrodden men everywhere, the inspiration for living to those who had faith in us and our ideals, principals and basic pronouncements were the hope of the world, in comparison we are now preserving vicious dictatory, old corrupt and tottering governments and turning all of the wealth created by our ancestors and modern day potentialities in a mad race to keep factories working and a few all powerful against the interests, well being and now the very survival of every man woman and child on this entire earth.

"I Therefore Proclaim A State Of Emergency In Aurora Illinois and ask every able bodied citizen of this country, who does not have a criminal, insane or other special unsavory record to come to the city hall council chambers at the city hall at 7 P.M., Tuesday night Oct. 14, 1958 to see if the people can be heard and get a remedy from their ills as some of our predecessors did to thro off the yoke of absolute monarchy and potential slavery in their day. I will welcome all races, all creeds and even legally registered Communists who are welcome if the are sincerely willing to help preserve our laws and bear arms for this purpose and to preserve our great heritage, priceless ideals, principals and purposes or rather and this is important, Come Back To Them, all races creeds and colors are invited to 'bear arms,' as the Constitution provides, the protection and preservation of the law in Aurora and let us once more be the City of 'Lights' which guides the way by attending this most important meeting in the history of Aurora. /s/ Paul Egan Mayor of Aurora, Illinois."

The affidavit filed upon behalf of defendants recited a course of conduct by Egan covering three years by which it is claimed he attempted to obtain continuous personal publicity by press, radio and otherwise; that he had discharged or attempted to discharge twelve persons as Chief of Police, most of whom were appointed by him, and that on one occasion he appointed a young lady as Chief of Police who was publicity agent for several Chicago taverns, well knowing she had no experience for the office; that Egan constantly solicited publicity from the press, radio and television for his acts and doings; that he refused release from jail although a person was available and ready to put up bond, and that he demanded his attorney telephone the President of the United States and the Governor of the State of Illinois demanding that he be pardoned or released without bail.

The motion of the defendants recited that when Egan asked every able-bodied citizen, even registered Communists, to come to the meeting, bearing arms, for the purpose of throwing off the yoke of potential slavery, the real purpose of Egan was to overthrow by use of force and arms the police department of the City of Aurora. The motion also recited the meeting was attended by a packed and boisterous crowd; that in the event of a disturbance it would have exposed the public to serious threat of injury or loss of life because of inadequate exits from the council chambers; that the offense of disturbing the peace was committed in the presence of the police officers.

Egan's affidavit denied he was attempting to incite a public disturbance at the time and place of the events alleged in the complaint; it asserted the crowd was not boisterous; that he never appointed a parrot as Chief of Police of the City of Aurora, and that he did not appoint twelve persons as Chiefs of Police. Egan also recited that he had been acquitted by a jury of the charge he had violated Section 160 of the Criminal Code of the State of Illinois, Ill.Rev. Stat.1959, c. 38, § 160, which charge was brought against him after his arrest at the meeting.

■ A summary judgment may not be entered pursuant to Rule 56, Federal Rules of Civil Procedure, 28 U.S.C.A., unless there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. We think the questions of fact which are disputed in this case are immaterial, and that the defendants are entitled to judgment as a matter of law.

Whether Mayor Egan's course of conduct, including the call to the public meeting in the council chamber, was "political baffoonery" as characterized by the defendants, or a sincere desire by Egan to discuss issues of the day, is not of great importance under the cir-

cumstances under which the citizens of Aurora gathered at the meeting on the evening of October 14, 1958. It is evident that the invitation to attend the meeting extended by the Mayor, suggesting those attending bear arms, was fraught with great danger to all those crowded into the Council Chambers.

We are faced with a situation where one state public official seeks to invoke the protection of the Federal Government against other state officials in the preservation of what he conceives to be his official status. Mr. Egan alleges he was conducting the meeting in his "official capacity as Mayor of the City of Aurora." Plaintiff's rights, as mayor, arise under and are protected by the laws of the State of Illinois.

■ A local controversy such as this involving a dispute between officials and officers of a municipality is not the kind of case which should be brought in the federal courts. As we stated in People ex rel. Turnbaugh v. Bibb, 7 Cir., 252 F.2d 217, 219: " * * * Federal jurisdiction is to be exerted only in exceptional cases involving such an emergency or great urgency as necessitate action to prevent irreparable injury. The jurisdiction to interfere with the proceedings of state governmental bodies charged with the prosecution and punishment of offenders is an exceedingly delicate one to be exercised with the greatest of care and nicest sense of propriety. * * *"

The latest expression of this Court on the subject before us for decision is Monroe v. Pape, 7 Cir., 1959, 272 F.2d 365. There an action was brought under the Federal Civil Rights Act because of alleged misconduct of Chicago police officers. The City of Chicago was one of the defendants. We sustained the District Court's dismissal of the cause on the ground the complaint did not state a claim upon which relief could be granted. We relied largely upon our decision in Stift v. Lynch, 7 Cir., 267 F.2d 237.

In the Stift case, the defendants were respectively, a sheriff, a deputy sheriff, a justice of the peace, a state's attorney and an assistant state's attorney. We disagreed with the argument that the Federal Civil Rights Act applies to "every person", pointing to the case of Tenney v. Brandhove, 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019, where the Supreme Court held members of the California State Legislature acting through a Committee were immune to action under the Federal Civil Rights Act.

In Stift, we referred to some decisions in other circuits which were contrary to our holding, but also cited others showing our decision was in accord with the great weight of authority. We distinguished the case of Wakat v. Harlib, 7 Cir., 253 F.2d 59. Relying upon our decisions in Eaton v. Bibb, 7 Cir., 217 F.2d 446, Miles v. Armstrong, 7 Cir., 207 F.2d 284, and United States ex rel. Atterbury v. Ragen, 7 Cir., 237 F.2d 953, we held the complaint did not state a claim under the Federal Civil Rights Act upon which relief could be granted against the sheriff and the deputy sheriff. We held the justice of the peace was a judicial officer to which the common law immunity would apply. We held no claim was stated against the state's attorney and the assistant state's attorney.

■■ In Jennings v. Nester, 7 Cir., 217 F.2d 153, 155, we pointed out that the Federal Civil Rights Act was not enacted to discipline local law-enforcement officials. We stated: "The common law provides adequate actions for damages against errant law enforcement officials." In Monroe v. Pape, 272 F.2d 365, 366, we said: "Plaintiffs are not without their remedy in the state court." These comments are applicable to the case at bar.

We hold the District Court was correct in entering judgment for all of the defendants.

Affirmed.