William V. FOWLER, State Chairman of the California Committee Called the Knights of the Ku Klux Klan, Plaintiff,

v.

UNITED STATES of America and its Officials, State of California and its Officials, Attorney General Lynch, Los Angeles County Sheriff Peter Pitchess, Defendants.

No. 66–1469.

United States District Court
C. D. California.

Sept. 21, 1966.

William V. Fowler, in pro. per.

Manuel L. Real, United States Atty., Frederick M. Brosio, Jr., Richard J. Dauber, Asst. U. S. Atty., Los Angeles, Cal., for defendants United States and its officials.

Miles J. Rubin, Chief Asst. Atty. Gen., State of California, S. Clark Moore, James Kline, Deputy Attys. Gen., Los Angeles, Cal., for defendants State of California and its officials and Thomas C. Lynch, Atty. Gen. of California.

Irvin C. Taplin, Jr., Deputy Los Angeles County Counsel, Los Angeles, Cal., for defendant Peter J. Pitchess, Sheriff of County of Los Angeles, California.

HAUK, District Judge.

Plaintiff, who identifies himself as "Rev. William B. Fowler, State Chairman of the California Knights of the Ku Klux Klan, a California Committee", and "Chaplain in this Religious State Educational Committee", and "Honorary State Cyclops", has filed a complaint for $100,000 damages and for a temporary restraining order, preliminary injunction and permanent injunction. As defendants he has named "United States of America and its Officials, State of California and its Officials", the Attorney General of the State of California, Thomas C. Lynch, and the Sheriff of Los Angeles County, Peter Pitchess. He seeks to enjoin the defendants, their agents, servants and employees and all persons acting under or in concert with them from blocking entry to or exit from private property, or in any manner whatsoever interfering with an alleged "right of peaceful assembly on private property". Plaintiff further seeks an injunction that the defendants employ sufficient law enforcement strength to "prevent any attempt by anyone to disrupt, disturb, or to interfere in any way with the right of peaceful assembly."

Upon plaintiff's application for a temporary restraining order and order to

show cause why preliminary injunction should not issue, this matter came on for hearing on September 13, 1966, was briefly argued by defendants after lengthy statements and testimony by plaintiff, and was then continued for further hearing to September 15, 1966, at which time plaintiff filed and served an amendment to the complaint, withdrawing his alleged claim for damages and limiting his action strictly to one for injunctive relief, further testified at great length and presented two exhibits. Defendant Sheriff Peter J. Pitchess submitted an affidavit and the matter was argued at length by defendants and plaintiff.

The Court having heard the arguments and having examined the evidence and proofs offered by the respective parties as aforesaid, and the cause having been argued and submitted to the Court for its decision, the Court now makes its decision, findings and conclusions denying plaintiff's application for temporary restraining order and order to show cause why preliminary order should not issue, and ordering judgment for the defendants.

The determination of this matter is dependent upon the facts before the Court and the conclusions of the Court upon two issues:

1. Must the Court empanel a three-judge court, or may the Court decide the matter as a single-judge court?

2. Has the plaintiff made sufficient showing to warrant the issuance of a temporary restraining order and order to show cause re preliminary injunction?

## FACTS

Examination of all of the evidence and proofs presented, both oral and documentary, including the complaint and its amendment, all the other pleadings, plaintiff's sworn testimony, the two exhibits introduced by plaintiff and received in evidence by the Court, and the affidavit of Sheriff Peter J. Pitchess, the facts clearly and unequivocally show the following:

Plaintiff, Rev. William V. Fowler, as California State Chairman of a group whom he calls "The California Knights of the Ku Klux Klan, a California Committee", and as "Chaplain in this Religious State Educational Committee", is planning to hold a meeting or rally on the night of Saturday, September 17, 1966, at 6:00 p. m., on land located at the corner of Soledad Canyon Road and Capra Road, consisting of some fourteen hundred (1,400) acres. According to the complaint and plaintiff's testimony in support of his application for a temporary restraining order and order to show cause re preliminary injunction, this land, or at least the portion of it upon which plaintiff and his group desire to hold their meeting and rally, is owned by the United States of America and is administered by the United States Forest Service, a division of the United States Department of Agriculture. Plaintiff claims that because the meeting and rally is being organized and held by the Ku Klux Klan the defendants acting under color of legality and by various means are engaged in, are attempting to engage in, and are threatening to engage in, activities to harass, hinder, disrupt, disturb, and even prevent plaintiff and his group from holding a lawful meeting upon "private property".

While the land upon which the meeting is to be held is Government-owned land, plaintiff claims to have a sub-permit or sublease from one Gerald C. Broderson, who in turn holds a sub-permit or sublease from parties named Anton Lambert and Thomas P. Regis, who in turn are holders of a Special Use Permit from the United States Forest Service for orchard-growing purposes and uses.

Plaintiff does admit that this permission given to him by Broderson, under the sub-permit or sublease to use this orchard area on National Forest land for the September 17th Ku Klux Klan meeting and rally, was rescinded and revoked by Broderson on September 8, 1966, by a written revocation (Plaintiff's Exhibit One) sent from Broderson to plaintiff, returning the $1.00 which plaintiff

had paid Broderson for the permission. In the same revocation, plaintiff was notified by Broderson that he had been advised by the United States Forest Service that his issuance of the permission to plaintiff for the Klan meeting and rally was in violation of Paragraph 14 of the aforesaid Special Use Permit issued to Anton Lambert and Thomas P. Regis by the Forest Service.

█ Plaintiff states that this Broderson revocation is but one phase of the defendants' activities of which he complains. Yet, despite intensive questioning of the Court, plaintiff could not and did not describe or produce the United States Forest Service's basic Special Use Permit to Lambert and Regis, nor their sub-permit or sublease to Broderson, nor the sub-permit or sublease from Broderson to plaintiff.

At the hearing on September 13, 1966, when asked by the Court for any additional evidence of any possible harassment, hindrance, disruption, disturbance, prevention, interference, or other activities of any kind threatening or proposing to threaten the holding of his proposed meeting and Ku Klux Klan rally or attendance at the meeting and rally, plaintiff could not and did not describe, indicate, or refer to any other action or activities of any kind by any of the defendants.

At the second hearing on September 15, 1966, when plaintiff filed his amendment to the complaint striking his claim for damages, and limiting the action to injunctive relief, he submitted his second exhibit, which is the only other action of defendants which plaintiff was able to bring to the attention of the Court as constituting interference or threatened interference with the proposed Ku Klux Klan meeting and rally. Plaintiff's Exhibit Two consists of a Complaint For Injunction filed by the State of California against plaintiff Fowler, Los Angeles County Superior Court No. 893,571, on September 14, 1966, the day between the two hearings here in Federal Court, together with a temporary restraining order issued therein by the Superior Court Judge Ralph H. Nutter and restraining plaintiff from making any representations that he and his group are entitled to collect any money or solicit any members or hold any meetings or act in any way as the "Ku Klux Klan, a Georgia Corporation", which had been declared defunct with its corporate franchise forfeited in a *quo warranto* proceeding in the Superior Court more than twenty years ago, Judgment No. 513,041 of Judge Alfred E. Paonessa, entered May 22, 1946.

As part of the Superior Court temporary restraining order, plaintiff was ordered to appear in that court on September 28, 1966, two weeks hence, to show cause why he should not be enjoined *pendente lite*, from representing that the "Knights of the Ku Klux Klan, a Georgia Corporation", is now lawfully entitled to act as a corporation in the State of California; from collecting any money for the benefit or use thereof; and from soliciting new members therein.

█ It is plaintiff's contention that this Superior Court complaint and temporary restraining order also constitute some sort of harassment or interference with the proposed Ku Klux Klan rally on Saturday, September 17, 1966. But nowhere in the Superior Court complaint, or in the temporary restraining order, or in the entire Exhibit Two, is there the slightest indication of any such activity. The temporary restraining order is solely against making representations, collecting money, or soliciting members in the "Ku Klux Klan, a Georgia Corporation". Nowhere is there any showing of any restraint, harassment or interference, or threats thereof of any kind upon plaintiff, or his group, or the proposed Ku Klux Klan meeting and rally in Soledad Canyon on the night of September 17, 1966.

By way of contrast, it is undisputed, and the affidavit of Sheriff Pitchess in opposition to plaintiff's application clearly and unequivocally shows, that the Sheriff has in no way harassed or hindered plaintiff or any other persons from holding the proposed Ku Klux Klan meet-

ing and rally on September 17, 1966, in Soledad Canyon; that the Sheriff has not conspired with anyone to interfere with the proposed meeting and rally; and that he does not intend to do so.

So much for the facts. The rest of plaintiff's presentation consists of mere conclusionary allegations set forth in the layman's language of his inartfully and ineptly drawn complaint and its amendment, which he admits having prepared himself after cursory telephonic conference with a lawyer and fellow Klansman practicing in San Diego.

It might be noted that the Court advised plaintiff at the first hearing, on September 13, 1966, to obtain the services of a competent lawyer, but at the second hearing, on September 15, 1966, and despite the urgings of the Court, plaintiff firmly continued to insist on representing himself, stating that, though he had consulted again by phone with this San Diego attorney, he did not want to be represented in court by him or any other attorney.

With the state of the record as it is, the Court has no alternative but to find that the plaintiff has made absolutely no showing of any facts that would warrant the issuance of the temporary restraining order and order to show cause re preliminary injunction which plaintiff seeks. Not only has he failed completely to produce any evidentiary facts showing any interference of any kind with the proposed Ku Klux Klan meeting and rally on Saturday night, September 17, 1966, in Soledad Canyon, but the facts which were adduced by his own sworn testimony and by his two exhibits confirm the Court's finding that no harassment, hindrance, interference, obstruction, disruption, disturbance, or prevention of the proposed Klan meeting and rally has occurred; that no such activity has been engaged in by any of the defendants; that no such activity has been threatened by conspiracy, by talk, or by action by any of the defendants; and that, in fact, no such actions will conceivably occur.

## SINGLE-JUDGE COURT IS PROPER FORUM

In this state of the record, with the plaintiff utterly failing to show any factual support whatsoever for his conclusionary allegations of deprivation of civil and constitutional rights, it is clear that the Court should decide the matter as a single-judge court without convening a three-judge court. When, upon examining all of the pleadings, exhibits, admissions, affidavits, testimony and all other matters before the Court during the hearing, the court finds that there is no substantial Federal question involved, the statutes requiring a three-judge court in civil rights cases (28 U.S.C. §§ 2281–2284) do not apply. Smith v. State of California, 336 F.2d 530, 534 (C.A.9th 1964); Pierre v. Jordan, 333 F.2d 951, 956–957 (C.A.9th 1964); Blue and Gold Stamps-U-Save Premium Co. v. Sobieski, 190 F.Supp. 133, 134–135 (S.D.Cal.1961); Ex Parte Poresky, 290 U.S. 30, 31–32, 54 S.Ct. 3, 78 L.Ed. 152 (1933); Idlewild Bon Voyage Liquor Corporation v. Epstein, 370 U.S. 713–715, 82 S.Ct. 1294, 8 L.Ed.2d 794 (1961).

Moreover the three-judge court statute is a technical requirement that must be construed narrowly. Gate Film Club v. Pesce, 236 F.Supp. 828, 829 (S.D.N.Y. 1964), aff'd 339 F.2d 888 (C.A.2d 1964); Phillips v. United States, 312 U.S. 246, 251, 61 S.Ct. 480, 85 L.Ed. 800 (1941); California Water Service Co. v. City of Redding, 304 U.S. 252, 254, 58 S.Ct. 865, 82 L.Ed. 1323 (1938).

Plaintiff Fowler has utterly failed to make any showing of facts entitling him to any relief under the Federal Civil Rights Act (42 U.S.C. §§ 1981–1985, 1988) which he has specifically invoked in his testimony and argument if not in his self-prepared complaint and amendment to complaint, and which are the only possible source and foundation of his claim for relief.

In essence these statutes prohibit, and authorize the Federal courts to enjoin, all actions and activities which, under

color of authority, deprive any person of any rights, privileges and immunities secured by the laws and Constitution of the United States, and, in the context of the proceeding here before the Court, particularly the First Amendment thereof, guaranteeing freedom of speech and freedom of assembly.

But, upon the facts undisputed and beyond all possible doubt here, the Court necessarily concludes as a matter of law that no defendant, whether under color of any statute, ordinance, regulation or usage, or otherwise, subjected plaintiff or caused plaintiff to be subjected to the deprivation of any right, privilege or immunity secured by the laws and Constitution of the United States, and particularly any secured by the First Amendment thereof. Just as clear and undisputed as a matter of fact and law it is that no defendant threatened to do so or conspired to do so. Nor, factually or legally, did any defendant deprive plaintiff or threaten or conspire to deprive plaintiff of any civil rights or equal protection of the laws in violation of the Fourth or Fourteenth Amendments. There is absolutely no way the Court could make a factual finding or come to a legal conclusion that any defendant engaged in any wrongful or illegal acts or threats or conspiracies to deprive plaintiff of any of his rights, privileges or immunities secured by the laws and Constitution of the United States, or for that matter of the State of California.

No substantial Federal question has here been raised, none is here involved, and the Court properly proceeds in this matter as a single-judge court, particularly since, as is demonstrated and concluded hereinafter, plaintiff's claim for relief is obviously without merit and there is no jurisdiction of subject matter or parties.

TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION MUST BE DENIED.

The relief sought by plaintiff here is extraordinary and should not be granted, because in the state of the record before this Court plaintiff has not made any showing either in fact or in law that he is entitled to this relief under the Civil Rights Acts (42 U.S.C. §§ 1981–1985, 1988).

■ A temporary restraining order or preliminary injunction ordinarily will not be granted if any debate or doubts are created by the record as to the merits of the claimed relief or the power of the Court to act. Acme Fast Freight v. United States, 135 F.Supp. 823, 824 (D. Del.1954).

■ As was stated by Judge Yankwich in Paramount Pictures Corp. v. Holden, 166 F.Supp. 684, 689 (S.D.Cal. 1958):

"At to interlocutory injunctions, the rule declared both by California and federal cases is that the power is discretionary and should not be exercised except where it is clear that the question presented by the litigant who seeks the injunction is free from doubt."

Further exercise of this principle is found in Alaska Sales and Service v. Rutledge, 128 F.Supp. 1, 3, 15 Alaska 443 (D.Alaska 1955) and Wing v. Arnall, 198 F.2d 571, 575 (Emerg.App.1952).

■ Here the record not only raises doubts and debatable issues as to plaintiff's right to relief, but it is crystal clear that there is no substantial Federal question and, therefore, no basis of any kind for plaintiff's claim for relief. It is, in the language of the cases, "obviously without merit" and the Court has not only the power and discretion, but the duty and obligation, to deny injunctive relief. Smith v. State of California, supra; Pierre v. Jordan, supra; Blue and Gold Stamps-U-Save Premium Co. v. Sobieski, supra; Ex Parte Poresky, supra; Idlewild Bon Voyage Liquor Corporation v. Epstein, supra. See also Lion Mfg. Co. v. Kennedy, 117 U.S.App. D.C. 367, 330 F.2d 833, 841 (1964); Voege v. American Sumatra Tobacco Corp., 192 F.Supp. 689, 691 (D.Del. 1961); Moss v. Hornig, 214 F.Supp. 324,

328 (D.Conn.1962) aff'd 314 F.2d 89 (C.A.2d 1963) ; Linehan v. Waterfront Comm., 116 F.Supp. 401, 404 (S.D.N.Y. 1953).

■ Under the Civil Rights Acts, the courts have been careful to exert Federal jurisdiction "only in exceptional cases involving such an emergency or great urgency as necessitate action to prevent irreparable injury. The jurisdiction to interfere with the proceedings of state governmental bodies charged with the prosecution and punishment of offenders is an exceedingly delicate one to be exercised with the greatest of care and nicest sense of propriety." Egan v. City of Aurora, 275 F.2d 377, 380 (C.A. 7th 1960) ; Stift v. Lynch, 267 F.2d 237, 239 (C.A.7th 1959).

There is no question here but that plaintiff has utterly failed to show any facts that would serve as a basis for concluding that there was any activity or threatened activity which could possibly be described as an "emergency" or "situation of great urgency", or which could by any conceivable possibility lead to or result in irreparable injury to the plaintiff.

■ Moreover, it has always been the rule that to state a claim against a public official for deprivation of civil rights highly specific facts must be alleged. Roberts v. Barbosa, 227 F.Supp. 20, 22 (S.D.Cal.1964). General conclusionary allegations unsupported by facts have consistently been rejected as insufficient to constitute a claim under the Civil Rights Acts. United States ex rel. Hoge v. Bolsinger, 311 F.2d 215, 216 (C.A.3d 1962) ; Stiltner v. Rhay, 322 F.2d 314, 316 (C.A.9th 1963). See also Progress Development Corp. v. Mitchell, 182 F.Supp. 681, 713 (N.D.Ill.1960), where the court pointed out that "[t]he mere intention to take some action at some time in the future, which might or might not occur, and which if it does occur might present a situation coming under the Civil Rights Act, does not present any justiciable question under the Civil Rights Act."

It is uncontrovertible that both factually and legally the Court here not only has the power and discretion to deny plaintiff's application for temporary restraining order and order to show cause re preliminary injunction. It is, in fact and in law, the Court's duty and obligation to deny this relief, and the Court so concludes.

### DISMISSAL AND SUMMARY JUDGMENT

■ Plaintiff, as we have heretofore demonstrated and concluded, has failed to state a claim upon which the relief sought can be granted. He has failed to show any factual or legal basis for any substantial Federal question under the Civil Rights Acts or otherwise. For this reason alone, if for no other, plaintiff's complaint and amendment to complaint should be dismissed. Smith v. State of California, supra ; Pierre v. Jordan, supra ; Blue and Gold Stamps-U-Save Premium Co. v. Sobieski, supra ; Ex Parte Poresky, supra ; Idlewild Bon Voyage Liquor Corporation v. Epstein, supra.

A second ground for dismissal, equally conclusive, is that since plaintiff here seeks injunctive relief to prevent any possible interference or threatened interference with a proposed Klan meeting and rally to be held on the evening of September 17, 1966, the entire proceeding is, as of this moment, absolutely moot.

The Court is writing this decision, findings of fact, conclusions of law and judgment herein on Wednesday, September 21, 1966, at least three days after the date of the proposed meeting. To grant any injunctive relief of any kind at this state would be a futile and idle act. The matter obviously is now moot and plaintiff himself, at the second of the two hearings, acknowledged that when he limited his claim for relief to one for injunctive remedy only and amended his complaint by striking the claim for damages, the matter would necessarily become moot after the date of the proposed meeting.

It is elementary that no Federal court should ever attempt to decide moot questions. And this is particularly true where the relief sought is the extraordinary remedy of injunction. 6 Moore's Federal Practice (2d Ed.1965) 3075, § 57.13.

Thus an injunction suit to prevent workmen's activity on a construction job becomes moot when the job is in fact completed. Barker Painting Co. v. Local No. 734, etc., 281 U.S. 462, 463–464, 50 S.Ct. 356, 74 L.Ed. 967 (1930).

Similarly, an injunction suit to prevent the broadcasting of a football game becomes moot after passage of the day of the game. Johnson-Kennedy Radio Corp. v. Chicago Bears Football Club, 97 F.2d 223, 225 (C.A.7th 1938).

So, too, a libel in admiralty for possession of a cargo of bananas becomes moot when the bananas are spoiled and dumped into the sea. Otis v. International Mercantile Co., 95 F.2d 539, 541 (C.A.9th 1938).

Beyond any doubt there is no question here that plaintiff's complaint, amendment to complaint and entire claim for relief necessarily became moot when the day of the Klan meeting and rally, to which his entire action is oriented, has come and gone. There is nothing the Court could grant to plaintiff in any conceivable way that could have any effect on a meeting and rally that has already taken place. Again, for this reason alone if for no other, the action should be dismissed. The Court necessarily, then, has the duty and obligation to dismiss the complaint and the amendment to the complaint, both as a matter of fact and as a conclusion of law.

A third ground for dismissal is that the Civil Rights Statutes (42 U.S.C. §§ 1981–1985, 1988) do not afford any basis for civil actions and particularly injunctive actions against public officers acting in their official capacities in good faith and in pursuance of federal or state law. Kenney v. Killian, 133 F.Supp. 571, 578 (W.D.Mich.1955);

Copley v. Sweet, 133 F.Supp. 502, 509 (W.D.Mich.1955).

The reason for this rule is a simple and fundamental matter of policy which, in the words of Judge Learned Hand in Gregoire v. Biddle, 177 F.2d 579, 580–581 (C.A.2d 1949) is to permit public officers to act unflinchingly in the discharge of their duties without a constant dread of retaliation.

But even more important than these considerations is the fact that, with respect to defendant United States of America, the well-established principle of law summed up in the phrase, "doctrine of sovereign immunity", stands as an unalterable and impregnable barrier between plaintiff and any injunctive relief against this defendant.

Stated another way, the sovereign cannot be sued without its consent and any possible waiver of this immunity, as for instance in the Federal Tort Claims Act (28 U.S.C. §§ 1346(b), 2671–2680), must be strictly construed. United States v. Sherwood, 312 U.S. 584, 589, 61 S.Ct. 767, 85 L.Ed. 1058 (1941); Wallace v. United States, 142 F.2d 240, 243 (C.A.2d 1944), cert. den. 323 U.S. 712, 65 S.Ct. 37, 89 L.Ed. 573 (1944) Candell v. United States, 189 F.2d 442, 444 (C.A.10th, 1951.)

Nor can the plaintiff evade the doctrine of sovereign immunity by claiming that this suit is one against officers of the United States, since a suit against such officers is, in effect, a suit against the United States itself and must fail because of the government's immunity from suit. Larson v. Domestic and Foreign Commerce Corp., 337 U.S. 682, 688, 69 S.Ct. 1457, 93 L.Ed. 1628 (1948); Malone v. Bowdoin, 369 U.S. 643, 647, 82 S.Ct. 980, 8 L.Ed.2d 168 (1962); Dugan v. Rank, 372 U.S. 609, 620, 83 S.Ct. 999, 10 L.Ed.2d 15 (1963).

Turning now to the State of California, it is clear that the word "persons" as used in the Civil Rights Acts (42 U.S.C. § 1983) does not include a State or its governmental subdivision, acting in its *sovereign*, as distinguished

from its proprietary, capacity. Hewitt v. City of Jacksonville, 188 F.2d 423, 424 (C.A.5th 1951), cert. den. 342 U.S. 835, 72 S.Ct. 58, 96 L.Ed. 631 (1951); Sires v. Cole, 320 F.2d 877, 879 (C.A.9th 1963).

 Thus it is that the defendants are entitled to judgment against plaintiff, whether this judgment should be in the form of a dismissal motion or in the form of a summary judgment, or both. Rule 12(b) of the Federal Rules of Civil Procedure, provides that a motion to dismiss for failure of the pleading to state a claim upon which relief can be granted shall be treated as one for summary judgment and disposed of under Rule 56 if matters outside the pleading are presented to and not excluded by the Court, and if all parties have been given reasonable opportunity to present all pertinent material. Moss v. Hornig, 214 F.Supp. 324, 330–331 (D.Conn.1962); North America Iron and Steel Co. v. United States, 130 F.Supp. 723, 724 (E.D.N.Y. 1955); Hibben v. Kuchaj, 117 F.Supp. 55, 56 (N.D.Ill.1953).

These two conditions have been met here, since plaintiff was given every opportunity and encouragement by the Court to present all the facts in his possession, including hearsay information and belief both by oral testimony under oath and by exhibits which he presented and the Court did not exclude. Therefore a summary judgment in favor of the defendants is in order.

It follows that plaintiff's complaint and amendment to complaint should be and in fact must be dismissed by the Court on its own motion as to all defendants and the Court so concludes as a matter of law. Additionally, summary judgment should be granted in favor of all defendants against plaintiff and, again, the Court so concludes as a matter of law.

The foregoing shall and do constitute the decision, findings of fact and conclusions of law herein, as required by Rule 52, Federal Rules of Civil Procedure.

Judgment shall be entered accordingly, denying plaintiff's application for a temporary restraining order and order to show cause why preliminary injunction should not issue, effective as of Thursday, September 15, 1966; and dismissing plaintiff's complaint and amendment to complaint without leave to amend and granting summary judgment in favor of all defendants, effective as of Wednesday, September 21, 1966.