Shasta HATTER, a minor, by Jane Gordon, her next friend and Julie Johnston, a minor, by Caroline (Daniels) Connell, her next friend, both individually and on behalf of all others similarly situated, Plaintiffs,

v.

LOS ANGELES CITY HIGH SCHOOL DISTRICT et al.

No. 70–11.

United States District Court, C. D. California.

March 12, 1970.

Buckley, Diamond, Levenson & Young, Kenneth Cloke, Venice, Cal., for plaintiffs.

John D. Maharg, County Counsel, Philip S. Miller, Deputy County Counsel, Los Angeles, Cal., for defendants.

## MEMORANDUM OPINION and ORDER

CURTIS, District Judge.

Shasta Hatter and Julie Johnston, the plaintiffs herein, are students at Venice High School. A dress code has been put into effect in the school establishing certain approved standards of wearing apparel and personal appearance with which all students are required to conform. The plaintiffs have taken exception to the code and have endeavored to bring about its modification, but without success.

In order to demonstrate their dissatisfaction with the dress code, the plaintiffs have undertaken to boycott the school's annual chocolate drive, an activity sanctioned by the administration by which students raise money through the sale of candy to finance some of their functions. In furtherance of the boycott, Shasta and others, from a position off the school grounds but across the street, passed out leaflets urging other students to join the boycott. This was in violation of a rule adopted by the Los Angeles Unified School District requiring all matter distributed or exhibited on school property to be authorized by a responsible member of the administration. Such a regulation was in

effect at Venice High School. For this activity, Shasta was suspended from November 25 to December 3, 1969. Julie Johnston's participation in the boycott consisted of wearing a tag on her dress during school hours with the words "boycott chocolates." This, she alleges was ripped from her dress and she was threatened with suspension if she were to wear it again. Both plaintiffs, suing by a "next of friend", bring this Civil Rights action on their own behalf and on behalf of others similarly situated, alleging infringement of their constitutional rights of free speech and due process. They seek injunctive relief, a judgment declaring their rights, an order requiring the defendants to expunge from the school records references to Shasta's suspension, compensatory and punitive damages, and costs.

This matter is presently before this court on an application for preliminary injunction.

It appears that at this time the precise controversy upon which this case is predicated no longer exists. Shasta is back in school, the chocolate drive is over, the dress code has been modified, although not to plaintiffs' complete satisfaction, and there appears no threat of any immediate action which could be described as an "emergency" or "a situation of great urgency" or which might lead to irreparable injury to the plaintiffs. It would seem, therefore, that the questions raised here are now moot.

The plaintiffs contend, however, that the incidents related in the complaint and in the affidavits of other students, filed herein in support of plaintiffs' position, are all typical of the oppressive practices which the administration has followed and will continue to follow unless restrained. It is the threat of future disciplinary measures that plaintiffs say has a chilling effect upon their constitutional right of free expression. They, therefore, seek a declaration of their rights.

■ However, there are no allegations of a present threat of any specific act as to which this court can make an adjudication. A mere intention on the part of the administration to take some action at some future time, which, if it does occur, might constitute a cause of action under the Civil Rights statutes does not present a justiciable question. Fowler v. United States, 258 F. Supp. 638 at 645 (C.D.Cal.1966); Doremus v. Board of Education, 342 U.S. 429 at 432, 72 S.Ct. 394, 96 L.Ed. 475 (1952); United States v. Alaska S.S. Company, 253 U.S. 113 at 116, 40 S.Ct. 448, 64 L.Ed. 808 (1920).

■ The preliminary injunction, therefore, should be denied as the questions presented are moot and there is no showing of urgency or need for preliminary injunctive relief.

Furthermore, there is no likelihood that the plaintiffs will ultimately be successful in this litigation as the complaint on its face sets forth no cause of action cognizable in this court.

In Blackwell v. Issaquena County Board of Education, 363 F.2d 749 at 753 (5th Cir. 1966), the court said:

"It is always within the province of school authorities to provide by regulation the prohibition and punishment of acts calculated to undermine the school routine. This is not only proper in our opinion but is necessary.

"Cases of this nature, which involve regulations limiting freedom of expression and the communication of an idea which are protected by the First Amendment, present serious constitutional questions. A valuable constitutional right is involved and decisions must be made on a case by case basis, keeping in mind always the fundamental constitutional rights of those being affected. Courts are required to 'weigh the circumstances' and 'appraise the substantiality of the reasons advanced' which are asserted to have given rise to the regulations in the first instance. Thornhill v. State of Alabama, 310 U.S. 88, 60 S.Ct. 736, 84 L.Ed. 1093 (1940). The constitutional guarantee of freedom of speech 'does not confer an absolute right to speak' and the law recognizes that

there can be an abuse of such freedom. The Constitution does not confer 'unrestricted and unbridled license giving immunity for every possible use of language and preventing the punishment of those who abuse this freedom.' Whitney v. People of State of California, 274 U.S. 357, 47 S.Ct. 641, 71 L.Ed. 1095 (1927). The interests which the regulation seeks to protect must be fundamental and substantial if there is to be a restriction of speech. In Dennis v. United States, 341 U.S. 494, 71 S.Ct. 857, 95 L.Ed. 1137 (1951), the Supreme Court approved the following statement by Chief Judge Learned Hand:

'In each case [courts] must ask whether the gravity of the "evil", discounted by its improbability, justifies such invasion of free speech as is necessary to avoid the danger.' "

■ As a corollary to this rule, I suggest that it is likewise the duty of the court in each case to ask whether that which the student wishes to say is of such importance as would justify the court in interfering with the school authorities' attempt to regulate where, when and how he shall say it.

The plaintiffs rely on two cases. The first is Tinker v. Des Moines Independent Community School District, 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969). In this case, the United States Supreme Court struck down, as constitutionally impermissible, a school regulation prohibiting the wearing of a black armband at school, protesting the war in Vietnam. The second case is Burnside v. Byars, 363 F.2d 744 (5th Cir. 1966), where the Fifth Circuit held that a regulation prohibiting a student from wearing a "freedom button" protesting segregation violated the plaintiff's First Amendment rights. These two cases are distinguishable from the one which we are presently considering for several reasons.

In the first place, in both cases the plaintiffs were young children protest-

ing on the very periphery of large protest movements, conceived and carried on by adults outside of the school community and as to issues wholly unrelated to the school program.

But the important distinction is that in both cases the issues, as to which the plaintiffs were attempting to express an opinion, were matters of great national concern. In this context the Court in both cases found that, in the absence of any appreciable disruption of the school program, the regulation was an infringement upon the plaintiffs' First Amendment rights.

■ In weighing the importance of maintaining administrative authority to regulate and discipline students against the plaintiffs' personal rights to stir up a boycott of the school's candy drive to protest the school dress code, we find the latter to be without weight or substance and that it raises no question of constitutional proportions.

■ The plaintiff Shasta has urged that her suspension was effected without a hearing and that she was, therefore, denied due process. The affidavits or Robert Bosanko, the principal of the high school, and Shiela Hirshberg, the school's vice principal, allege that the provisions of California Education Code § 10607 have been complied with, and since this allegation has not been denied, we assume it to be true. Due process in this context requires no more. The court in Madera v. Board of Education, 386 F.2d 778, 788–789 (2d Cir. 1967) stated:

"Law and order in the classroom should be the responsibility of our respective educational systems. The courts should not usurp this function and turn disciplinary problems, involving suspension, into criminal adversary proceedings—which they definitely are not."

Judge Crary, of this court, in Baker v. Downey City Board of Education, 307 F.Supp. 517 (C.D.Cal.1969), said:

"Due process is not a fixed, inflexible procedure which must be accorded

in every situation. It varies with the circumstances involved. In the instant case, the school officials were charged with the conduct of the educational program and if the temporary suspension of a high schol student could not be accomplished without first preparing specifications of charges, giving notice of hearing, and holding a hearing, or any combination of these procedures, the discipline and ordered conduct of the educational program and the moral atmosphere required by good educational standards, would be difficult to maintain."

It appears further from the affidavits on file that any injury which Shasta suffered by reason of her suspension is negligible.

It is therefore ordered, for the reasons hereinabove set forth, that the application for a preliminary injunction herein be, and the same is, hereby denied, and

It is further ordered that plaintiffs' complaint be dismissed, without leave to amend, upon the ground that the complaint fails to state facts upon which the plaintiffs may recover and it does not appear that there are further facts which the plaintiffs could allege which would cure the complaint. C List!